81

the Closing Agent, the Escrow Agent, the Debt Agreement Agents and the Promissory Note Agent and not for the protection of the Purchasers.

(ii) <u>The Working Committee for Argentina</u>. No member of the Working Committee for Argentina, as such, shall have any duties or obligations whatsoever with respect to this Agreement or any other document or any matter related hereto, except as expressly provided in this Agreement.

(b) <u>No Liability</u>. (i) <u>The Closing Agent, the Escrow Agent, the Debt Agreement Agents and the Promissory Note Agent</u>. None of the Closing Agent, the Escrow Agent, the Debt Agreement Agents, the Promissory Note Agent or any of their respective directors, officers, agents or employees shall have any liability or responsibilities to Argentina or any other Person on account of the failure of any other Person to perform its obligations under this Agreement or any other document or instrument referred to herein. Each Purchaser agrees that the limitation on liability contained in this Section 5.03(b) is for the benefit and protection of the Closing Agent, the Escrow Agent, the Debt Agreement Agent, the Promissory Note Agent and their directors, officers, attorneys, agents and employees and not for the protection of the Purchasers.

(ii) <u>The Working Committee for Argentina</u>. No member of the Working Committee for Argentina, as such, shall have any liability or responsibilities to Argentina or any other Person on account of the failure of any other Person to perform its obligations under this Agreement or any other document or instrument referred to herein.

SECTION 5.04. <u>Indemnification by Purchasers</u>. (a) <u>Expenses</u>. The Purchasers agree to indemnify the members of the Working Committee for Argentina and the Closing Agent, the Escrow Agent and their respective directors, officers, attorneys, agents and employees (to the extent not reimbursed by Argentina) for their respective ratable shares of any and all liabilities, obligations, losses, damages, penalties, judgments, costs, expenses or disbursements of any kind or nature whatsoever (including all counsel fees and expenses), which may be imposed on or incurred by a member of the Working Committee for Argentina or the Closing Agent or the Escrow Agent for any action taken or omitted to be taken by a member of the Working Committee for Argentina or the Closing Agent under this Agreement or any other document delivered hereunder (including without limitation any action taken or omitted to be taken before the date hereof by a member of the

Working Committee for Argentina or the Closing Agent or the Escrow Agent or any of their respective directors, officers, attorneys, agents or employees in connection with this Agreement); provided that no Purchaser shall be liable for any portion of any such amount resulting from the gross negligence or willful misconduct of a member of the Working Committee for Argentina or the Closing Agent or the Escrow Agent. Without limiting the generality of the foregoing, each Purchaser agrees that it will, subject to the limitations set forth in the proviso to the preceding sentence, upon demand pay or reimburse the members of the Working Committee for Argentina and the Closing Agent and the Escrow Agent (to the extent that each such member or the Closing Agent is not reimbursed by Argentina) for any amount for which Argentina is liable under clauses (i), (ii) and (iv) of Section 6.05(a) hereof and in its ratable share of any out-of-pocket expenses (including fees of special New York, Argentine and other counsel to the Working Committee for Argentina or the Closing Agent or the Escrow Agent) incurred in connection with the negotiation, preparation, printing, signing and administration of this Agreement or any other Principal Bond Agreement or any amendment hereof or thereof or waiver or consent hereunder or thereunder or in connection with preserving any rights of the Purchasers or of the Closing Agent or of the Escrow Agent hereunder or thereunder or obtaining legal advice in respect of the rights and responsibilities of the Purchasers or the Closing Agent or the Escrow Agent hereunder or thereunder or otherwise in connection with the transactions contemplated hereby or thereby.

(b)  Calculation of Ratable Shares.  For purposes of Section 5.04(a), the ratable shares of the Purchasers shall be determined in proportion to the U.S. Dollar equivalent (as determined in accordance with Section 6.14 hereof) of their respective Reconciled ED and Unreconciled ED.

SECTION 5.05.   Successor Closing Agent.  Subject to the written acceptance of a successor Closing Agent as provided below in this Section 5.05, the Closing Agent may resign at any time (effective as provided below in this Section 5.05) by giving written notice thereof to the Purchasers and Argentina and may be removed at any time with or without cause by Argentina or by the Majority Purchasers. Upon any such removal or notice of resignation, Argentina shall have the right to appoint (such appointment to become effective as provided below) a successor Closing Agent which meets the requirements set forth below in this Section 5.05, and Argentina shall use its best efforts so to appoint a

successor Closing Agent as promptly as practicable, and shall give notice of any such appointment to the Purchasers. If no successor Closing Agent shall have been so appointed by Argentina and shall have accepted such appointment within 30 days after such removal or notice of resignation, then the Majority Purchasers shall have the right to appoint (such appointment to be effective as provided below) a successor Closing Agent within 30 days from such initial 30 day period. If no successor Closing Agent shall have been so appointed by either Argentina or the Majority Purchasers and shall have accepted such appointment within 60 days after such removal or notice of resignation, then the retiring Closing Agent may appoint, on behalf of Argentina and the Purchasers, a successor Closing Agent (such appointment to be effective as provided below). Any successor Closing Agent appointed pursuant to this Section 5.05 shall have offices in London and New York and shall be a commercial bank or trust company or an Affiliate thereof, having a combined capital and surplus of at least U.S.$1,000,000,000 or its equivalent in another currency or shall be a merchant bank affiliated with such a commercial bank. No appointment of a successor Closing Agent shall be effective if Argentina receives notice from the Majority Purchasers that they object to the appointment of such successor Closing Agent within 30 days after Argentina notifies them of such appointment; provided that the consent of the Majority Purchasers shall not be required if such successor Closing Agent is a member of the Working Committee for Argentina. No appointment of a successor Closing Agent by the Majority Purchasers or the retiring Closing Agent shall be effective without the written consent of Argentina, which shall not be unreasonably withheld; provided further that the consent of Argentina shall not be required if such successor Closing Agent is a member of the Working Committee for Argentina. Upon the acceptance by a successor Closing Agent of any appointment as Closing Agent hereunder and, in the case of any appointment by Argentina, the expiration of the 30-day period for objection by the Majority Purchasers and, in the case of any appointment by the Majority Purchasers or the retiring Closing Agent, the giving of consent to such appointment as described above by Argentina, such successor Closing Agent shall (a) succeed to and become vested with all the rights, powers, privileges and duties of the retiring Closing Agent, and upon (but only upon) such acceptance, the retiring Closing Agent shall be discharged from further responsibilities under this Agreement and (b) notify Argentina and the Purchasers thereof. The provisions of this Article VI shall continue to inure to the benefit of the retiring Closing Agent as to any actions taken or omitted to

84

be taken by it while it was Closing Agent under this Agreement.

SECTION 5.06. <u>Relationship Among Closing Agent, the Escrow Agent, the Promissory Note Agent and the Debt Agreement Agents.</u> The Closing Agent, the Escrow Agent, the Promissory Note Agent and each Debt Agreement Agent have independent and separate functions and duties under this Agreement and the Debt Agreements. Each such entity may rely on each other such entity to perform its functions and duties, and no such entity shall be required to perform the functions and duties of any other such entity or to be responsible for the failure of any other such entity to perform its functions and duties.

85

# ARTICLE VI

## MISCELLANEOUS

SECTION 6.01.  Amendments, Etc.  Except as provided below, no amendment of any provision of this Agreement shall in any event be effective unless the same shall be in writing (including telex or telecopy) and signed by the Majority Purchasers and Argentina.  Except as otherwise expressly provided below and in Sections 2.03 and 2.04 hereof, no waiver of any provision of this Agreement, nor consent to any departure by any party therefrom, shall in any event be effective unless the same shall be in writing (including telex or telecopy) and signed by the Majority Purchasers (in the case of a waiver or consent by the Purchasers), or by the party or parties entitled to give such waiver or consent (in the case of a waiver or consent by a party other than the Purchasers), and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  Notwithstanding the foregoing, no amendment, waiver or consent:

(i)  shall do any of the following, unless in writing and signed by Argentina and Purchasers with at least 95% of the U.S. Dollar equivalent (as determined in accordance with Section 6.14 hereof) of the aggregate amount, at the time of determination, of Reconciled ED and Unreconciled ED:

(A)  change the percentage of or the aggregate principal amount of Reconciled ED or Unreconciled ED, or the number of Purchasers, which shall be required for the Purchasers or any of them to take any action hereunder, except clause (ii) below or Section 2.03 or 2.04 hereof,

(B)  change Schedule B or C hereto,

(C)  change this clause (i), or

(D)  change any definition in this Agreement in such a way as to do anything referred to in subclauses (A) through (C) above;

provided, however, that, in the case of any matter of the type specified in subclauses (A) through (D) above that relates specifically to a Series of Principal Bonds, any such amendment, waiver or consent shall be effective if in writing and signed by Argentina and:

86

(1)  Purchasers with at least 95% of the U.S.
Dollar equivalent (as determined in accordance with
Section 6.14 hereof), at the time of determination,
of Reconciled ED and Unreconciled ED to be exchanged
for such Series of Principal Bonds or with respect
to which Principal Bonds of such Series are to be
escrowed, and

(2)  Purchasers with more than 50% of the U.S.
Dollar equivalent (as so determined), at the time of
determination, of Reconciled ED and Unreconciled ED
(x) to be exchanged for Principal Bonds other than
Principal Bonds of such Series or (y) with respect
to which Principal Bonds other than Principal Bonds
of such Series are to be escrowed; or

(ii)  shall do any of the following, unless in
writing and signed by all Purchasers:

(A)  subject the Purchasers to any additional
obligations, including any additional obligations
under Section 5.04(a) resulting from the waiver of
the conditions precedent set forth in Section
2.03(e) or 2.04(c) hereof,

(B) - change this clause (ii), or

(C)  change any definition in this Agreement in
such a way as to do anything referred to in
subclause (A) or (B) above;

provided that no amendment, waiver or consent shall, unless
in writing and signed by the Closing Agent in addition to the
Purchasers required hereinabove to take such action and, if
required, by Argentina, affect the rights or duties of the
Closing Agent under this Agreement; and provided further that
any amendment, waiver or consent in writing and signed by any
Purchaser adversely affected thereby and the Closing Agent
shall be effective as to such Purchaser.  Nothing in this
Section shall prevent any Purchaser from subjecting itself to
obligations additional to those specified in this Agreement.
Notwithstanding the foregoing, (a) as items of Eligible Debt
are reconciled, prior to the Exchange Date or the Escrow
Release Date, as the case may be, Schedule A hereto may be
from time to time amended or otherwise modified by the mutual
agreement of a Purchaser, Argentina, the relevant Debt
Agreement Agent or the Promissory Note Agent, as the case may
be, and the Closing Agent to include an item of Eligible Debt

87

or any portion thereof of such Purchaser or otherwise modify
the amounts of Reconciled ED and Unreconciled ED of a
Purchaser; (b) once an item of Eligible Debt or any portion
thereof has been included on Schedule A hereto, any omission,
inconsistency or error in Schedule A hereto or any document
or information in connection therewith with respect to any
such item or portion thereof may be corrected by such
Purchaser by notice to the Closing Agent received not later
than the Reconciliation Cut-off Date for the Exchange Date or
the Escrow Release Date, as the case may be; provided that
any such correction may not, without the consent of
Argentina, modify the Reconciled ED, Unreconciled ED or
Exchange Amount of such Purchaser or alter the percentages
among the Series of Principal Bonds indicated by such
Purchaser in the statement by the Closing Agent pursuant to
Sections 2.05(b)(ii) and (iii); (c) Schedule A may be amended
to reduce a Purchaser's Reconciled ED and Exchange Amounts
(in accordance with the percentage allocation among Par Bonds
and Discount Bonds indicated on Schedule A for such
Purchaser) in connection with the assignment of Eligible Debt
by such Purchaser to an assignee which is an investor, or is
holding Eligible Debt on behalf of an investor, in a
scheduled privatization or other debt conversion program
pursuant to Section 6.10(c) hereof or the delivery of a debt
conversion notice which the Closing Agent has accepted;
(d) Schedule A may be amended to adjust a Purchaser's
percentage allocation among Par Bonds and Discount Bonds in
accordance with the adjustment procedures specified in
Section 2.07 hereof; and (e) this Agreement may be amended by
Argentina and the Closing Agent, without the consent of any
Purchaser, Debt Agreement Agent or the Promissory Note Agent,
for the purpose of curing or clarifying any ambiguity or
inconsistency or any defective provision contained herein or
to add to or change any provisions of this Agreement that
shall be necessary to facilitate the administration hereof or
in any manner which the Closing Agent and Argentina may deem
necessary or advisable; provided, however, that no such
amendment which adversely affects any claim of any Purchaser
to moneys hereunder or under any Principal Bond Agreement, or
which affects any right or obligation of any Debt Agreement
Agent in its capacity as such under the Debt Agreement as to
which it serves as Debt Agreement Agent, may be made without
the consent of such affected Purchaser or Debt Agreement
Agent.

SECTION 6.02.  Notices, Etc.  All notices and other
communications provided for hereunder shall, unless otherwise
stated herein, be in writing (including by telex or telecopy)
and mailed, sent or delivered (a) as to each of Argentina,

88

the Debt Agreement Agents, the Promissory Note Agent and the Closing Agent, at its addresses specified below, (b) as to each Purchaser, at the address of which such Purchaser shall notify the Closing Agent (which shall notify Argentina, and any Purchaser so requesting, of each such address), and (c) as to each party, at such other address as shall be designated by such party from time to time in a notice to the Closing Agent (which shall notify Argentina, the Debt Agreement Agents, the Promissory Note Agent and any Purchaser so requesting of, each such other address). All such notices and communications shall be given by hand, telex or telecopy; provided that, in the event that telex or telecopy facilities are not operational or generally not available between the cities in which the sender and the recipient of such notice and communications are located, such notices and communications may be given by mail or courier, but the sender shall use reasonable efforts to confirm notices or communications given by mail or courier as soon as telex or telecopy facilities shall become operational. All such notices and communications shall be effective when delivered by hand or, in the case of a mailed notice, upon the earlier of receipt and confirmation by telex, or facsimile transmission as provided below, or, in the case of facsimile transmission, when sent as addressed as set forth above, or, in the case of telex, when the telex is sent and the appropriate answerback is received, except that notices and communications to the Closing Agent pursuant to Article II and Section 6.01 hereof shall not be effective until received by the Closing Agent. All notices and communications delivered hereunder shall, unless submitted in the English language, be accompanied by a certified English translation thereof, which certified English translation shall (except in the case of laws, regulations or official determinations of Argentina or any Argentine Governmental Agency) be controlling absent manifest error in the case of any doubt as to the proper interpretation or construction of the document which it purports to translate. The addresses for Argentina, the Closing Agent, the Debt Agreement Agents and the Promissory Note Agent are set forth below:

Address of Argentina:

> Ministry of Economy and
>   Public Works and Services
> Secretariat of Domestic
>   and External Financing
> Hipólito Yrigoyen 250
> Piso 4, Oficina 410
> (1310) Buenos Aires
> Argentina
> Attention:  Subsecretaría de Financiamiento
>             Externo
> Fax:  (54-1) 331-9838
> TLX:  21952, ANSWERBACK:  MINEC AR

with a copy to:

> Banco Central de la Republica Argentina
> Reconquista 266
> (1003) Buenos Aires
> Argentina
> Attention:  Deuda Pública Externa
> Fax:  (54-1) 334-6468
> TLX:  24200, ANSWERBACK:  AR CTBAN

Address of the Closing Agent:

> Citibank, N.A.
> 641 Lexington Avenue
> New York, New York  10022
> United States of America
> Attention:  Argentina Closing Agency
> Fax:  (212) 688-9844
>      (212) 421-1658
> Telex:
>   WU Domestic:  6801437, ANSWERBACK:  CITI CIB
>                 or
>     RCA International:  236066, ANSWERBACK:  CIG WH

Address of the Debt Agreement Agents:

> Bank of New York
> 1 Wall Street, 5th Floor
> New York, NY  10286
> Attn:  Eleazar Castellanos
> Tel.:  (212) 635-8345
> Fax:  (212) 635-8395
> Attn:  Gerard McAuley
> Tel.:  (212) 635-7110
> Fax:  (212) 635-7111
> TLX:  420268, ANSWERBACK:  IRV UI

90

Chemical Bank
c/o Chemical Investment Bank
The Adelphi
1-11 John Adam Street
London WC2N 6HT
United Kingdom
Attn:  Steve Hurford
       Chris Callaway
Tel.:  (44-71) 932-4422/3253/4238
Fax:   (44-71) 839-8381
TLX:   884901, ANSWERBACK:  MAN LTD

Banque Nationale de Paris, Buenos Aires
25 de Mayo 471/487
Buenos Aires, Argentina
Attn:  Eric Oliviero/Silvia Parodi
Tel.:  (54-1) 311-4668/4659
Fax:   (54-1) 311-1368
TLX:   9225, ANSWERBACK:  BNP BA AR

Citibank, N.A.
641 Lexington Avenue, 7th Floor
New York, NY  10022
Attn:  Joe Kutzler/Susan Vetrovsky
Tel.:  (212) 559-0653/0090
Fax:   (212) 421-1658/308-5164/688-9844
TLX:   669830, ANSWERBACK:  CITI CIB

Crédit Lyonnais
11, Rue de Marivaux
75002 Paris, France
Attn:  Mme. Wetzel/Michel Bachere
Tel.:  (33-1) 49.26.71.05/71.32
Fax:   (33-1) 49.26.71.77
TLX:   215807, ANSWERBACK:  CLRES

Midland Bank plc
P.O. Box 181
27-32 Poultry
London EC2P 2BX
United Kingdom
Attn:  Christine Cox
       Brian Heslop
Tel.:  (44-71) 260-5362/5169
Fax:   (44-71) 260-4303
TLX:   892572, ANSWERBACK:  MIDIFTG

91

Morgan Guaranty Trust Company of New York
500 Stanton Christiana Rd.
Newark, DE  19713
Attn:  Kevin McCaan
Tel.:  (302) 992-1850
Fax:   (302) 992-1852/72
TLX: 177615, ANSWERBACK: MGT UT

Royal Bank of Canada Europe Ltd.
71 Queen Victoria Street
London EC4V 4DE
United Kingdom
Attn:  Diane White/Sarah Hood/
       David Mayger
Tel.:  (44-71) 489-1188
Fax:   (44-71) 329-6144
TLX:   851929111, ANSWERBACK: RBCCTY G

Address of the Promissory Note Agent:

Morgan Guaranty Trust Company of New York
60 Wall Street, 10th Floor
New York, NY  10260
Attn:  Juana Alvarez
Tel.:  (212) 648-7468
Fax:   (212) 648-5069
Attn:  Samuel Zona
Tel.:  (212) 648-7469
Fax:   (212) 648-5069
TLX:   177615, ANSWERBACK: MGT UT

SECTION 6.03.  No Waiver; Cumulative Remedies.  No
failure on the part of Argentina, any Purchaser or the
Closing Agent to exercise, and no delay in exercising, any
right hereunder shall operate as a waiver thereof, nor shall
any single or partial exercise of any such right preclude any
other or further exercise thereof or the exercise of any
other right, all subject to the conditions and limitations of
this Agreement.  The rights and remedies herein provided are
cumulative and not exclusive of any remedies provided by law.

SECTION 6.04.  Accounting Terms; Banking Terms.
(a)  Accounting Terms.  Any accounting term not specifically
defined herein shall be construed in accordance with
generally accepted United States accounting principles
consistently applied, except as otherwise stated herein.

(b)  Banking Terms.  All banking terms not
specifically defined herein shall be construed in accordance
with general practice among international commercial banks in

New York City and in London; provided that terms applicable to any Principal Bonds denominated in Deutsche Mark shall be construed in accordance with the usages applicable to such terms in the Federal Republic of Germany.

SECTION 6.05. Costs, Expenses, Etc. (a) Documentation, Reconciliation and Collection Expenses, Etc. Argentina agrees to pay:

(i)  all reasonable and documented costs and expenses, including reasonable counsel fees and expenses, of the Working Committee for Argentina in accordance with the terms of the expense reimbursement agreement dated as of January 1, 1992;

(ii)  all reasonable and documented costs and expenses of (A) the members of the Working Committee for Argentina and (B) in accordance with the terms of the agreement dated as of June 2, 1992, the Closing Agent in connection with the preparation, execution and initial delivery of this Agreement and the other Principal Bond Agreements (including, without limitation, travel costs, communications costs, printing, reproduction, listing and delivery expenses and the reasonable fees and out-of-pocket expenses of special New York, Argentine and other counsel to the Working Committee for Argentina or the Closing Agent with respect thereto);

(iii)  all reasonable and documented fees and out-of-pocket expenses of (A) each Debt Agreement Agent payable in accordance with each Debt Agreement to which it is a party and (B) each of the Debt Agreement Agents and the Promissory Note Agent in connection with its services relating to the reconciliation and confirmation of Eligible Debt, payable in accordance with the relevant agreement governing the payment and reimbursement of such fees and expenses;

(iv)  all reasonable and documented costs and expenses of the Closing Agent (including, without limitation, all reasonable counsel fees and out-of-pocket expenses) incurred in connection with preserving any rights of the Purchasers generally or of the Closing Agent under this Agreement or any other Principal Bond Agreement or obtaining legal advice in respect of the rights and responsibilities of the Purchasers or the Closing Agent generally hereunder or thereunder;

93

(v)   all reasonable and documented out-of-p̲.̲ expenses of each Purchaser (including, without limitation, all reasonable counsel fees and court costs, stamp taxes, duties and fees) incurred in connection with enforcing this Agreement or otherwise protecting its rights in the event of any failure by Argentina to comply with the provisions hereof;

(vi)   all reasonable and documented out-of-pocket expenses of each Debt Agreement Agent and the Promissory Note Agent (including, without limitation, all reasonable counsel fees and court costs, stamp taxes, duties and fees) incurred in connection with enforcing this Agreement or otherwise protecting its rights in the event of any failure by Argentina to comply with the provisions hereof; and

(vii)   any and all liabilities, obligations, losses, damages, penalties, judgments, costs, expenses or disbursements of any kind or nature whatsoever which may be imposed on or incurred by the members of the Working Committee for Argentina, the Closing Agent, any Debt Agreement Agent or the Promissory Note Agent in any way relating to or arising out of this Agreement, any other Principal Bond Agreement or any of the transactions contemplated by the 1992 Financing Plan or any action taken or omitted by the members of the Working Committee for Argentina, the Closing Agent, any Debt Agreement Agent or the Promissory Note Agent hereunder or thereunder;

provided that Argentina shall not be (A) liable for any such amount resulting from the gross negligence or willful misconduct of the Closing Agent, any Debt Agreement Agent, the Promissory Note Agent, any Purchaser or any member of the Working Committee for Argentina or (B) obligated to pay under this Section 6.05(a) any such amount which is included in calculating the Closing Agent's fees payable pursuant to Section 5.01(b) hereof or otherwise payable to the Closing Agent thereunder.

(b)   Payment of Expenses in Respect of Principal Bonds.   Argentina agrees to pay (i) all reasonable and documented costs and expenses in connection with the preparation, printing, issue, sale, listing, and initial delivery of the Principal Bonds (in global or definitive form); (ii) all reasonable and documented costs and expenses in connection with the preparation and printing of all documents relating to the issuance and sale of the Principal

94

Bonds under this Agreement; (iii) all reasonable and
documented costs and expenses of listing the Principal Bonds;
(iv) all reasonable and documented fees and expenses incurred
in connection with the transfer and release of Escrowed
Principal Bonds and the endorsement of the U.S. Temporary
Escrow Global Principal Bonds in connection with such
transfer and release; and (v) all fees and expenses incurred
in connection with the exchange of beneficial interests in
the Global Principal Bonds for Principal Bonds in definitive
form in accordance with the provisions of the Fiscal Agency
Agreements.

(c) Subrogation. If any Purchaser pays any amount
which Argentina is obligated to pay to the Closing Agent, the
Promissory Note Agent, any Debt Agreement Agent or any member
of the Working Committee for Argentina hereunder, such
Purchaser shall be subrogated to the rights of the Closing
Agent, any Debt Agreement Agent, the Promissory Note Agent or
such member of the Working Committee for Argentina (as the
case may be) against Argentina in respect of such amount.
Nothing in this Section shall relieve Argentina of any
liability under this Agreement to any party hereto.

(d) Fees Relating to Reconciliation. Argentina,
the Closing Agent, the Promissory Note Agent and the Debt
Agreement Agents hereby agree that no fee shall be imposed on
any Purchaser in connection with the reconciliation and
cancellation of any item of Eligible Debt or Eligible
Interest other than fees payable in connection with the
assignment of Eligible Debt.

(e) Fees, Expenses and Indemnification of Escrow
Agent. Argentina agrees to pay all fees of the Escrow Agent
as shall be specified in the Escrow Agreement and all
reasonable and documented costs and expenses of the Escrow
Agent (including, without limitation, all reasonable counsel
fees and out-of-pocket expenses) incurred in connection with
the performance of its duties as Escrow Agent and in
preserving the interests of the Purchasers in the Principal
Bonds in the Escrow Accounts. Argentina also agrees to
indemnify the Escrow Agent for any liabilities imposed on
such Escrow Agent in connection with its performance
hereunder or under the Escrow Agreement, except for
liabilities imposed as a result of the gross negligence or
wilful misconduct of the Escrow Agent.

SECTION 6.06. Taxes; Certain Tax Matters. (a)
Payments Free and Clear. Any and all payments by Argentina
under this Agreement, any other Principal Bond Agreement or

the BCRA Undertaking shall be made free and clear of and
without deduction for any and all present or future taxes,
levies, assessments, imposts, deductions, charges or
withholdings, and all liabilities with respect thereto
(i) imposed by Argentina (or any political subdivision or
taxing authority thereof or therein or any organization or
federation of which Argentina is at any time a member) (all
such taxes, levies, assessments, imposts, deductions,
charges, withholdings and liabilities being "Argentine
Taxes") or (ii) imposed by any other jurisdiction (or any
political subdivision or taxing authority thereof or therein
or any organization or federation of which such jurisdiction
is at any time a member) from or through which any payment
under this Agreement, the Principal Bonds, any other
Principal Bond Agreement or the BCRA Undertaking is made (all
such taxes, levies, imposts, assessments, deductions,
charges, withholdings and liabilities being "Paying Agency
Taxes" and, together with the Argentine Taxes, the
"Applicable Taxes"); provided, however, that Applicable Taxes
shall not include (i) Argentine Taxes (x) imposed on an
Argentine Person, or (y) imposed on a Person who is deemed to
have a permanent establishment in Argentina to which this
Agreement, the Principal Bonds, the Other Principal Bond
Agreements and the BCRA Undertaking and the income therefrom
is attributable (unless this Agreement, any other Principal
Bond Agreement and the BCRA Undertaking are being held or
booked or payments are received in Argentina solely to
enforce any rights under this Agreement, any other Principal
Bond Agreement or the BCRA Undertaking or exercise any rights
hereunder or thereunder that otherwise would not, in the
opinion of independent counsel of recognized standing, be
exercisable) or (ii) Paying Agency Taxes that (A) are imposed
by reason of any connection between the Purchaser and the
taxing jurisdiction other than entering into this Agreement
or the other Principal Bond Agreements, holding the Principal
Bonds or receiving payment thereon, (B) are required to be
deducted or withheld by any Paying Agent from a payment made
under this Agreement, any other Principal Bond Agreement or
the BCRA Undertaking if such payment can be made without
deduction or withholding by any other Paying Agent or (C)
would not have been imposed but for the presentation by the
Purchaser of any claim for payment under this Agreement, any
other Principal Bond Agreement or the BCRA Undertaking more
than 30 days after the date on which such payment became due
and payable or on which payment thereof was duly provided
for, whichever occurs later. If Argentina, the BCRA, the
Paying Agent or the Closing Agent shall be required by law to
deduct any Applicable Taxes, from or in respect of any sum
payable by it under this Agreement, any other Principal Bond
Agreement or the BCRA Undertaking:

(x)  the sum payable shall be increased as may be necessary so that, after making all required deductions (including deductions of such Applicable Taxes applicable to additional sums payable under this Section), the Purchaser receives an amount equal to the sum it would have received had no such deductions of such Applicable Taxes been made,

(y)  Argentina, BCRA, the Paying Agent or the Closing Agent, as the case may be, shall make such deductions, and

(z)  Argentina, BCRA, the Paying Agent or the Closing Agent, as the case may be, shall pay the full amount deducted to the relevant taxing authority or other authority in accordance with applicable law.

(b)  <u>Payment of Stamp Taxes</u>.  In addition, Argentina agrees to pay (i) any present or future stamp, court or documentary taxes or any other excise or property taxes, charges or similar levies and any related interest or penalties incidental thereto imposed by Argentina or any or any organization or federation of which Argentina is at any time a member which arise from any payment made by Argentina, the Closing Agent or the Paying Agent hereunder or from the execution, delivery, performance, enforcement or registration of, or otherwise with respect to, this Agreement, the other Principal Bond Agreements or the BCRA Undertaking and (ii) with respect to the DMK Bonds, any present or future stamp, court or documentary taxes and any other excise, charges or similar levies and any related interest or penalties incidental thereto imposed by the Federal Republic of Germany (or any political subdivisions or taxing authority thereof or therein or any organization or federation of which the Federal Republic of Germany is at any time a member), which arise from any payment made by the Closing Agent or by Argentina, the Principal Paying Agent, the DMK Paying Agent (each as defined in the DMK Fiscal Agency Agreement) or such other bank or financial institution selected by the Escrow Agent at the German Clearing System for credit to the account of the Escrow Agent, the Principal Paying Agent or the DMK Paying Agent thereunder or hereunder or from the execution, delivery, performance, enforcement or registration of, or otherwise with respect to, this Agreement or the related Principal Bond Agreements (the taxes set forth in clause (i) and (ii) above hereinafter referred to as "<u>Other Applicable Taxes</u>").

(c) **Reimbursement of Taxes Paid by Purchasers.**
Argentina will indemnify each Purchaser for the full amount
of (i) Applicable Taxes and (ii) Other Applicable Taxes
(including, without limitation, any Applicable Taxes or Other
Applicable Taxes imposed on amounts payable under this
Section) imposed in respect of Bonds acquired by such
Purchaser pursuant to this Agreement and any liability
(including penalties, interest and expenses) arising from
such Applicable Taxes and Other Applicable Taxes or with
respect thereto. This indemnity will be paid in respect of
Applicable Taxes and Other Applicable Taxes imposed by
Argentina, whether or not such Applicable Taxes or Other
Applicable Taxes were correctly or legally asserted. Any
indemnification under this subparagraph (c) shall be made
within 30 days from the date such Purchaser makes written
demand to Argentina therefor. Each such demand shall be
accompanied by a reasonably detailed certificate setting
forth the specific reasons for which such Purchaser paid any
amount in respect of which it seeks indemnification and the
method by which such Purchaser calculated, and the
calculation of, the amount in respect of which it seeks
indemnification, which certificate shall be conclusive and
binding for all purposes in the absence of manifest error.

(d) **Tax Certificates.** Within 30 days after the
date of any payment of Applicable Taxes or Other Applicable
Taxes by Argentina or a Paying Agent, Argentina or such
Paying Agent will furnish to the Fiscal Agent the original or
a certified copy of a receipt evidencing payment thereof.
The Fiscal Agent shall furnish each Purchaser to which
Argentina made (or is obligated to make) a payment that
resulted in Applicable Taxes or Other Applicable Taxes with,
if practicable, an original of such original or certified
copy or, if insufficient originals are available for
distribution, shall provide each such Purchaser with access
to an original.

(e) **Certain Tax Matters.** Argentina hereby advises
each Non-U.S. Purchaser of DMK Bonds that (a) the DMK Bonds
in bearer form are being issued in compliance with United
States Treasury Regulation Section 1.163-5(c) and (b) such
Non-U.S. Purchaser is subject to sanctions with respect to
the disallowance of losses and preferential capital gains
treatment under Sections 165(j) and 1287(a) of the Code,
unless such Non-U.S. Purchaser either (i) is not a United
States taxpayer, or (ii) if it is a United States taxpayer,
(A) it is a "financial institution" within the meaning of
United States Treasury Regulation Section 1.165-12(c)(1)(v)
that complies with the requirements of Section 165(j)(3)(A),

(B) or (C) of the Code and the Treasury regulations
thereunder or (B) it holds the Bonds through a financial
institution that agrees to comply and complies with the
requirements of Section 165(j)(3)(A), (B) or (C) of the Code
and the Treasury regulations thereunder.

SECTION 6.07.  Consent to Jurisdiction; Waiver of
Immunities.  (a)  Argentina hereby irrevocably submits to the
non-exclusive jurisdiction of any New York State or Federal
court sitting in New York City, the High Court of Justice in
London, any Federal court sitting in the City of Buenos
Aires, the District Court (Landgericht) of Frankfurt am Main
and any appellate court from any thereof, in any suit, action
or proceeding arising out of or relating to the Principal
Bonds, this Agreement and the other Principal Bond Agreements
(except that the Republic of Argentina shall submit to the
jurisdiction of the District Court (Landgericht) of Frankfurt
am Main only with respect to suits, actions or proceedings
arising out of or relating to the Principal Bonds denominated
in Deutsche Mark and the Principal Bond Agreements relating
thereto), and Argentina hereby irrevocably agrees that all
claims in respect of such suit, action or proceeding may be
heard and determined in such New York State or Federal court,
in the High Court of Justice in London, any Federal court
sitting in the City of Buenos Aires or the District Court
(Landgericht) of Frankfurt am Main provided that, for
purposes of any interpleader commenced pursuant to Section
3.05 hereof, Argentina irrevocably submits to the exclusive
jurisdiction of the United States District Court for the
Southern District of New York and any appellate court
therefrom.  Argentina irrevocably waives, to the fullest
extent it may effectively do so, the defense of an
inconvenient forum to the maintenance of any such suit,
action or proceeding and any objection to any such suit,
action or proceeding whether on the grounds of venue,
residence or domicile.  A final judgment in any such suit,
action or proceeding shall be conclusive and may be enforced
in other jurisdictions by suit on the judgment or any other
manner provided by law.

(b)  Argentina hereby irrevocably appoints (i) the
New York office of Banco de la Nación Argentina (the "New
York Process Agent"), with an office on the date hereof at
299 Park Avenue, 2nd floor, New York, New York 10171, United
States and, alternatively, hereby irrevocably appoints CT
Corporation System, with an office on the date hereof at 1633
Broadway, 23rd floor, New York, New York 10019, United States
(the "Alternate New York Process Agent"), in each case, as
its agent, to receive, on behalf of Argentina and its

99

property, service of copies of the summons and complaint and
any other process which may be served in any such suit,
action or proceeding brought in such New York State or
Federal court sitting in New York City, (ii) the London
office of Banco de la Nación Argentina (the "London Process
Agent"), with an office on the date hereof at Longbow House,
14-20 Chiswell Street, London EC1Y 45D, England and,
alternatively, hereby irrevocably appoints The Law Debenture
Trust Corporation p.l.c., with an office on the date hereof
at Princes House, 95 Gresham St., London EC2V 7LY, England
(the "Alternate London Process Agent" and, together with the
New York Alternate Process Agent, the "Alternate Process
Agents"), in each case, as its agent to receive on behalf of
itself and its respective property service of copies of the
summons and complaint and any other process which may be
served in any such action or proceeding brought in the High
Court of Justice in London and (iii) FIDEUROP
Treuhandgesellschaft für den Gemeinsamen Markt mbH,
Wirtschaftsprüfungsgesellschaft, with an office on the date
hereof at Beethovenstrasse 8-10, 6000, Frankfurt am Main,
Federal Republic of Germany (the "Frankfurt Process Agent"
and, together with the New York Process Agent and the London
Process Agent, the "Process Agents"), as its agent to receive
on behalf of itself and its respective property service of a
writ, summons, order, judgment or other document which may be
served in any such suit, action or proceeding arising out of
the DMK Bonds brought in the District Court (Landgericht) of
Frankfurt am Main. Service of any process may be served upon
an Alternate Process Agent in lieu of the applicable Process
Agent in any suit, action or proceeding in any New York State
or Federal court sitting in New York City and the High Court
of Justice in London if (i) at any time and for any reason it
appears to the party attempting to serve the process that
service of such process upon any Process Agent as provided
above may be ineffective or may not be feasible and (ii) upon
or before the serving of any process on any Alternate Process
Agent, the Alternate Process Agent and Argentina are notified
that service of such process is to be made on such Alternate
Process Agent in accordance with the provisions of this
sentence. Such service may be made by mailing or delivering
a copy of such process to Argentina in care of the
appropriate Process Agent or Alternate Process Agent at the
address specified above for such Process Agent or Alternate
Process Agent and, in the case of process served on an
Alternate Process Agent, by depositing a copy of such process
in the United States mails, addressed to Argentina at the
address specified in Section 6.02 hereof (such service to be
effective upon the delivery of such process to the Alternate
Process Agent and the depositing of such process in the

100

United States mails as aforesaid), and Argentina hereby
irrevocably authorizes and directs such Process Agent or
Alternate Process Agent to accept such service on its
behalf. Failure of any Process Agent or Alternate Process
Agent to give notice to Argentina or failure of Argentina to
receive notice of such service of process shall not affect in
any way the validity of such service on the Process Agent,
the Alternate Process Agent or Argentina. As an alternative
method of service, each party also irrevocably consents to
the service of any and all process in any such suit, action
or proceeding in such New York State or Federal court sitting
in New York City, the High Court of Justice in London or, in
any suit, action or proceeding arising out of the DMK Bonds,
the District Court (Landgericht) of Frankfurt am Main by the
mailing of copies of such process to such party at its
address specified in Section 6.02 hereof. Argentina
covenants and agrees that it shall take any and all
reasonable action, including the execution and filing any and
all documents, that may be necessary to continue the
designations of Process Agents and Alternate Process Agents
above in full force and effect, and to cause each Process
Agent and Alternate Process Agent to continue to act as such.

(c) Except as provided in the proviso to Section
6.07(a) hereof and as contemplated by Section 3.05(h) hereof,
nothing in this Section 6.07 shall affect the right of any
party to serve legal process in any other manner permitted by
law or affect the right of any party to bring any action or
proceeding against any other party or its property in the
courts of other jurisdictions.

(d) To the extent that Argentina has or hereafter
may acquire any immunity (sovereign or otherwise) from
jurisdiction of any court or from any legal process (whether
through service or notice, attachment prior to judgment,
attachment in aid of execution, execution or otherwise) with
respect to itself or its property, Argentina hereby
irrevocably waives such immunity in respect of its
obligations under the Principal Bonds, this Agreement and the
other Principal Bond Agreements, and, without limiting the
generality of the foregoing, Argentina (A) agrees that the
waivers set forth in this Section 6.07(d) shall have the
fullest scope permitted under the Foreign Sovereign
Immunities Act of 1976 of the United States and are intended
to be irrevocable for purposes of such act; and (B) consents
generally for the purposes of the State Immunity Act 1978 of
the United Kingdom to the giving of any relief or the issue
of any process. Notwithstanding the foregoing, Argentina

101

shall not waive any such immunity (1) with respect to the assets which constitute freely available reserves, pursuant to Article 6 of the Convertibility Law, the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of BCRA consistently prepared pursuant to Article 5 of the Convertibility Law and (2) with respect to property of the public domain located in the territory of Argentina or property owned by Argentina and located in its territory which is dedicated to the purpose of an essential public service.

SECTION 6.08. Judgment. (a) If for the purpose of obtaining judgment in any court it is necessary to convert a sum due hereunder to any party hereunder in one currency into another currency, the parties hereto agree, to the fullest extent permitted by law, that the rate of exchange used shall be that at which in accordance with normal banking procedures such party could purchase the first currency with such other currency in New York City on the business day in New York two days prior to the day on which final judgment is rendered.

(b) To the fullest extent permitted by law, the obligation of any party in respect of any sum payable hereunder by it to any other party hereunder shall, notwithstanding any judgment in a currency (the "Judgment Currency") other than that in which such sum is denominated in accordance with the applicable provisions of this Agreement (the "Agreement Currency"), be discharged only to the extent that on the business day following receipt by such other party of any sum adjudged to be so due in the Judgment Currency such other party may in accordance with normal banking procedures purchase the Agreement Currency with the Judgment Currency; if the amount of the Agreement Currency which could have been so purchased is less than the sum originally due to such other party in the Agreement Currency, such first party agrees, as a separate obligation and notwithstanding any such judgment, to indemnify such other party against such loss, and if the amount of the Agreement Currency which could have been so purchased exceeds the sum originally due to such other party, such other party agrees to remit to such first party such excess; provided that such Purchaser, Debt Agreement Agent, the Promissory Note Agent or the Closing Agent shall have no obligation to remit any such excess as long as Argentina shall have failed to pay such Purchaser, Debt Agreement Agent, the Promissory Note Agent or the Closing Agent, as the case may be, any obligations due and payable under this Agreement or any other Principal Bond Agreement, in which case such excess may be applied to such obligations of Argentina hereunder or thereunder in accordance with the terms of this Agreement.

SECTION 6.09.  Binding Effect; Termination; Partial Invalidity; Survival.  (a)  As each party executes this Agreement, this Agreement shall be binding on and inure to the benefit of such party and its successors and permitted assigns; provided, however, that the notification of the anticipated Exchange Date contemplated in Section 2.05(a) shall not be given by the Closing Agent prior to the date on which Purchasers committing to exchange Eligible Debt in an aggregate principal amount of at least 95% of $20.5 billion (or the USD Equivalent thereof determined in accordance with Section 6.14 using rates in effect on the first Business Day after the date of this Agreement) have executed this Agreement; provided, further, that if such Purchasers have not executed this Agreement by April 15, 1993, this Agreement shall terminate.  Notwithstanding the foregoing, all obligations of the Purchasers to exchange their Eligible Debt on the terms specified herein shall terminate on May 31, 1993 (the "Termination Date") if the Exchange Date does not occur on or prior to the Termination Date; provided that, the Termination Date may be extended beyond May 31, 1993 with the consent of Argentina and Purchasers holding at least 66-2/3% of the U.S. Dollar equivalent (as determined in accordance with Section 6.14 hereof), at the time of determination, of the Reconciled ED and Unreconciled ED of all Purchasers.

(b)  If one or more provisions contained in this Agreement shall be invalid, illegal or unenforceable in any respect in any jurisdiction or with respect to any party, such invalidity, illegality or unenforceability in such jurisdiction or with respect to such party shall not, to the fullest extent permitted by applicable law, invalidate or render illegal or unenforceable such provision in any other jurisdiction or with respect to any other party.  To the fullest extent permitted by law, each of the parties hereto waives any provision of law which renders any provision hereof invalid or illegal in any respect.  Without prejudice to the survival of any other agreement of Argentina hereunder, the agreements of Argentina contained in Sections 6.05 and 6.06 hereof, and the agreement of the Purchasers contained in Section 5.04 hereof, shall survive the termination of this Agreement pursuant to subsection (a) above, the payment in full of all other payments due hereunder or under the Principal Bonds, the other Principal Bond Agreements or the BCRA Undertaking and the performance of any other obligations hereunder or thereunder.

SECTION 6.10. Purchasing Office; Assignments of Eligible Debt. (a) Schedule A lists the Purchasing Office or Purchasing Offices selected by each Purchaser and whether taking into account, inter alia, its selection of such Purchasing Office or Purchasing Offices such Purchaser is a U.S. Person or a Non-U.S. Person. Any Purchaser may at any time, on or before the 20th calendar day preceding the Exchange Date, change its Purchasing Office for all or a portion of its Eligible Debt by giving notice on or before such date to Argentina and the Closing Agent designating a different office of such Purchaser (or its Affiliate) as its Purchasing Office for purposes of this Agreement; provided, however, that no such change to any Purchasing Office shall result in a reclassification of its status as a U.S. Person or a Non-U.S. Person. The Closing Agent shall acknowledge any such change of Purchasing Office as soon as practicable after receiving notice thereof and, at the request of any Purchaser, shall confirm the location of such Purchaser's Purchasing Office as indicated in the records of the Closing Agent.

(b) Except as set forth in subsection (c) below, no Purchaser may assign all or any portion of its Eligible Debt or any of its rights and obligations under this Agreement in respect of such Eligible Debt to any Person. Any purported assignment of Eligible Debt (other than as permitted in subsection (c) below) shall be null and void.

(c) Any Purchaser may, at any time after the Final Trading Date, assign its Eligible Debt as a whole or in part to another Purchaser or financial institution which is an investor, or is holding Eligible Debt on behalf of an investor, in a scheduled privatization or other debt conversion program (an "Assignee") if (i) such assignment is recognized and recorded by the relevant Debt Agreement Agent at least 40 calendar days before the Exchange Date, (ii) such assignment is accompanied by a certificate in the form of Schedule E hereto executed by the Assignee thereof to the effect that such Eligible Debt will be submitted by such Assignee for cancellation in connection with such privatization or other debt conversion program and (iii) such Assignee has executed, or ratified the execution of, the Amendments to which such Eligible Debt relates; provided that the assigning Purchaser or the Assignee shall pay to the Debt Agreement Agent or the Promissory Note Agent the assignment fees payable under the relevant Debt Agreement for the recordation of any assignment. Any purported assignment of Eligible Debt which fails to comply with the requirements of this Section 6.10(c) shall be null and void as regards Argentina, any Debt Agreement Agent, the Promissory Note Agent and the Closing Agent.

104

(d)  Argentina shall not assign any of its rights or obligations under this Agreement or any other Principal Bond Agreement.

(e)  As used in this Section, "assign" means assign or otherwise transfer; and "rights" means any rights or other benefits.

SECTION 6.11.  Obligations of the Purchasers Several.  The obligations of the Purchasers hereunder are several.  The failure of any Purchaser to carry out its obligations hereunder shall not relieve any other Purchaser, any Debt Agreement Agent, the Promissory Note Agent, the Closing Agent or Argentina of any of its respective obligations hereunder, nor shall any Purchaser, Debt Agreement Agent, the Promissory Note Agent or the Closing Agent be responsible for the obligations of, or any action taken or omitted by, any other Purchaser hereunder.  Each Purchaser shall be entitled to protect and enforce its rights arising out of this Agreement, and it shall not be necessary for any other Purchaser to be joined as an additional party in any proceedings for such purpose.

SECTION 6.12.  Calculation to Nearest Currency Unit.  Whenever any payments are to be made pro rata or any amount is to be divided equally, such proration or division shall be calculated to the nearest integral unit of the Principal Bond Currency in which such calculation is to be made.

SECTION 6.13.  Use of English Language.  Except as otherwise expressly provided herein, all certificates, reports, notices and other documents and communications given or delivered pursuant to this Agreement shall be in the English language or accompanied by an English translation thereof.

SECTION 6.14.  Computation of Percentages of Reconciled and Unreconciled Eligible Debt.  Except as otherwise provided herein, for the purpose of calculating any percentage of the aggregate principal amount of the Reconciled ED or Unreconciled ED or any pro rata or ratable shares to be determined in proportion to the amounts thereof, Reconciled ED or Unreconciled ED in Original Currencies other than U.S. Dollars shall be translated into U.S. Dollars (a) on any Business Day prior to the Translation Rate Determination Date, at the average of the buy and sell spot rates of exchange for such Original Currency and U.S. Dollars

105

at the close of business in London on the Business Day
preceding such Business Day, as quoted, in the absence of
manifest error, by the _Financial Times_ of London (or, if such
rates are not so quoted, a comparable publication or source
to be selected by the Closing Agent) and (b) on the
Translation Rate Determination Date or any Business Day
thereafter, using the Translation Rate for such Original
Currency.

SECTION 6.15.   Table of Contents and Section
Headings.  The table of contents and the headings herein are
intended for convenience only and shall be ignored in
construing this Agreement.

SECTION 6.16.   Execution in Counterparts; Copies.
(a) This Agreement may be executed in any number of
counterparts and by different parties hereto in separate
counterparts, each of which when so executed shall be deemed
to be an original and all of which taken together shall
constitute one and the same agreement.  Five complete sets of
counterparts shall be delivered to Argentina and five
complete sets of counterparts shall be delivered to and
lodged with the Closing Agent.  A composite conformed copy of
this Agreement (including the Exhibits hereto) and the
Closing Book identifying the parties executing this Agreement
shall be delivered to Argentina and each Purchaser, Debt
Agreement Agent and the Promissory Note Agent after the
Escrow Release Date.

(b)  No Person shall be permitted to execute this
Agreement, and thereby become a Purchaser hereunder, after
the Reconciliation Cut-Off Date for the Exchange Date without
the consent of Argentina and the Closing Agent, but in no
event shall any Person be permitted to execute this Agreement
after the Exchange Date.

SECTION 6.17.   Agreement Solely for Benefit of
Parties.  This Agreement is solely for the benefit of the
parties hereto and the Escrow Agent, and no other Person
shall be entitled to rely on, or is intended to receive any
benefit under, this Agreement.

106

SECTION 6.18.  GOVERNING LAW.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written by their respective officials, officers or agents thereunto duly authorized.

THE REPUBLIC OF ARGENTINA

By /s/ Domingo Cavallo
   Title: Minister of Economy
          and Public Works
          and Services

CITIBANK, N.A.,
  as Closing Agent

By /s/ William Rhodes
   Title: Vice Chairman

EXHIBIT
to Discount Bond and Par
Bond Exchange Agreement

[FORM OF DISCOUNT BOND AND PAR BOND]

[Form of Face of Bond]

[THIS BOND HAS NOT BEEN REGISTERED UNDER THE UNITED STATES
SECURITIES ACT OF 1933, AS AMENDED, AND MAY NOT BE OFFERED OR
SOLD DIRECTLY OR INDIRECTLY IN THE UNITED STATES OF AMERICA,
ITS TERRITORIES OR POSSESSIONS, OR TO OR FOR THE ACCOUNT OF
ANY U.S. PERSON (AS DEFINED IN REGULATION S OF THE UNITED
STATES SECURITIES ACT OF 1933), EXCEPT PURSUANT TO AN
EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT OR IN A
TRANSACTION NOT REQUIRING REGISTRATION UNDER SUCH ACT.   THIS
BOND IS TRANSFERABLE ONLY AS PROVIDED HEREIN AND IN THE
FISCAL AGENCY AGREEMENT REFERRED TO BELOW.][1]

[ORIGINAL ISSUE DISCOUNT LEGEND, AS REQUIRED BY THE FISCAL
AGENCY AGREEMENT.]

SALE OR TRANSFER IN BEARER FORM OF PARTICIPATIONS, OR
BENEFICIAL INTERESTS, HEREIN MAY SUBJECT THE SPONSOR THEREOF
TO SANCTIONS PURSUANT TO SECTION 4701 OF THE UNITED STATES
INTERNAL REVENUE CODE.

THIS BOND IS SECURED AS TO PAYMENT OF PRINCIPAL AT STATED
MATURITY.   THE COLLATERAL FOR PRINCIPAL IS NOT AVAILABLE TO
PAY THE PRINCIPAL OF THE BONDS, ON ACCELERATION, REDEMPTION
OR OTHERWISE, BEFORE STATED MATURITY OR TO PAY INTEREST.
THIS BOND IS ALSO PARTIALLY SECURED AS TO PAYMENT OF INTEREST
TO THE EXTENT PROVIDED IN THE COLLATERAL PLEDGE AGREEMENT
REFERRED TO IN PARAGRAPH 6 OF THE TERMS AND CONDITIONS ON THE
REVERSE OF THIS BOND.

[THIS BOND MAY NOT BE LISTED ON ANY STOCK EXCHANGE.]*

---

1.   This legend will be included on (i) all Bonds issued in
     connection with the U.S. Offering and (ii) all Bonds
     issued on transfer or exchange of, or in substitution
     for, any such Bonds until the legend may be removed in
     accordance with Section 6 of the Fiscal Agency Agreement
     (as defined herein).

*    USD Discount Series U and USD Par Series U only.

[THIS BOND MAY NOT BE SOLD OR TRANSFERRED AND SHALL BE
CANCELLED IN ACCORDANCE WITH SECTION 5(i) OF THE FISCAL
AGENCY AGREEMENT.   PAYMENTS IN RESPECT HEREOF SHALL BE MADE
IN ACCORDANCE WITH SECTION 5(b)(ii) OF THE FISCAL AGENCY
AGREEMENT]**

---

** Insert for definitive Bonds exchanged for beneficial
   interests in a U.S. Temporary Escrow Global Bond.

No. __-_____                              Principal Amount
                                               U.S.$__[2]__

## REPUBLIC OF ARGENTINA

Collateralized ___[3]___ Rate Bond Due 202[6]
                    (___[4]___)

THE REPUBLIC OF ARGENTINA ("Argentina"), for value
received, hereby unconditionally promises to pay to
_____[5]_____, or registered assigns, the principal sum
of __[2]__ UNITED STATES DOLLARS (U.S.$_____[2]_____) on
the Bond Maturity Date (as defined herein), on presentation
and surrender of this Bond, and to pay, on each Interest
Payment Date (as defined herein), interest in arrears on such
principal sum at the applicable Rate of Interest (as defined
herein) from the most recent Interest Payment Date to which
interest has been paid, or if no interest has been paid
from __[6]__, until the principal hereof shall have been paid
in full or payment thereof duly provided for and to pay
interest on overdue amounts of principal and interest
hereunder as provided in the Terms and Conditions (as defined
herein).

---

2.   Insert face amount.

3.   Insert "Floating" for Discount Series L and Discount
     Series U and "Fixed" for each Par Series L and Par
     Series U.

4.   Insert, for each Series, the Series designation (i.e.,
     USD Discount Series L, USD Discount Series U, USD Par
     Series L and USD Par Series U).

5.   Insert registered holder of this Bond.

6.   Insert the date which is the earlier of the Exchange
     Date and March 31, 1993.

The interest payable on any such Interest Payment Date will, subject to certain conditions set forth in the Terms and Conditions hereinafter referred to, be paid to the person in whose name this Bond is registered at the close of business in New York on the 15th day next preceding such Interest Payment Date.

Reference is made to the further provisions set forth under the Terms and Conditions of the Bonds endorsed on the reverse hereof (the "Terms and Conditions"), which shall for all purposes have the same effect as though fully set forth at this place.

This Bond shall not be valid or obligatory until the certificate of authentication hereon shall have been duly signed by an Authenticating Agent under the Fiscal Agency Agreement (as defined herein).

THIS BOND SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES.

IN WITNESS WHEREOF, Argentina has caused this Bond to be duly executed with the manual or facsimile signature of an Authorized Official in _____.

Dated: _____, 199_

THE REPUBLIC OF ARGENTINA

By _____
    Title:

Certificate of Authentication:

This is one of the Bonds referred to in the within-mentioned Fiscal Agency Agreement.

CITIBANK, N.A., as    OR    CITIBANK (LUXEMBOURG) S.A.,
Authenticating Agent        as Authenticating Agent

By _____    By _____
  Authorized Signatory       Authorized Signatory

Dated: _____    Dated: _____

[Form of Reverse of Bond]

TERMS AND CONDITIONS OF BONDS

1.   General.

(a)   This Bond is one of a Series of duly authorized Collateralized _____ [7]_____ Rate Bonds Due 202[8] ( [9] ) of Argentina issued in definitive form and in the form of Global Bonds for each Series (the "Bonds") pursuant to the USD Fiscal Agency Agreement dated as of _____ __, 199_ (as amended and in effect from time to time, the "Fiscal Agency Agreement") among Argentina, Citibank, N.A., as Fiscal Agent, Authenticating Agent, Paying Agent, Registrar, Transfer Agent and Calculation Agent and Citibank (Luxembourg) S.A., as Authenticating Agent, Paying Agent and Transfer Agent (said banks and their successors as such Fiscal Agents, Authenticating Agents, Registrar, Paying Agents, Transfer Agents and Calculation Agent being hereinafter called the "Fiscal Agent", "Authenticating Agent", "Registrar", "Paying Agent", "Transfer Agent" and "Calculation Agent", respectively), the terms of which are hereby incorporated herein by reference. Any Authenticating Agent, the Registrar, any Paying Agent, any Transfer Agent, the Calculation Agent and the Fiscal Agent are hereinafter sometimes collectively called the "Agents". Copies of (i) the Fiscal Agency Agreement and (ii) the Collateralized Discount Bond and Par Bond Exchange Agreement, dated as of December 6, 1992, among Argentina, the Persons named therein as Purchasers, Citibank, N.A., as Closing Agent, the financial institutions named therein as Debt Agreement Agents and Promissory Note Agent named therein are on file and available for inspection at the corporate trust offices of the Fiscal Agent in the Borough of Manhattan, City of New York and at such other offices of the Fiscal Agent as are from time to time designated as Paying Agents or Transfer Agents for the Bonds, and reference thereto is hereby made for a description of the rights and limitations of rights thereunder of the holders of the Bonds and the duties and

---

7.   Insert "Floating" for Discount Series L and Discount Series U and "Fixed" for Par Series L and Par Series U.

8.   Insert the date which is the earlier of the 30th anniversary of the Exchange Date and March 31, 2023.

9.   Insert, for each Series, the Series designation (i.e., USD Discount Series L, USD Discount Series U, USD Par Series L and USD Par Series U). Omit for U.S. Temporary Escrow Global Bond.

immunities of the Agents.  The Bondholders will be entitled
to the benefits of, be bound by, and be deemed to have notice
of, all of the provisions of the Terms and Conditions and the
Fiscal Agency Agreement.  The Fiscal Agent is not a trustee
for the Bondholders and does not have the same
responsibilities or duty to act for the Bondholders as a
trustee.  Capitalized terms used in this Bond have the
meanings specified in the Fiscal Agency Agreement unless
otherwise defined herein.

(b)  The Bonds are issued only as fully registered
Bonds, without coupons, in denominations of U.S.$250,000 and
multiples of $250,000 in excess thereof or in other
denominations permitted by the Fiscal Agency Agreement.

(c)  This Bond is the direct, general and
unconditional obligation of Argentina, and the full faith and
credit of Argentina is pledged for the due and punctual
payment of the principal of, and interest on, this Bond and
for the due and punctual performance of all obligations of
Argentina with respect hereto.

2.    Payments and Paying Agencies.

(a)  The principal of this Bond will be paid by
Argentina to the registered holder hereof, when due, against
presentation and surrender hereof at the office of the Fiscal
Agent, and at the offices of such other Paying Agents as
Argentina may appoint from time to time, by check drawn on,
or (at the option of any holder of at least U.S.$1,000,000 in
aggregate principal amount of Bonds) by wire transfer to an
account maintained by the registered holder hereof with a
bank in London or New York City.  Argentina has initially
appointed the principal office of Citibank, N.A. in New York
City and London, and of Citibank (Luxembourg) S.A. in
Luxembourg, as Paying Agents at which the principal of this
Bond will be payable (subject to applicable laws and
regulations).

(b)  Interest payable on this Bond on an Interest
Payment Date (as defined below) will (except as provided in
subparagraph (c) below) be paid to the holder of record of
this Bond at the close of business in New York City on the
record date for such Interest Payment Date by check mailed by
the Fiscal Agent to the last address for such holder
appearing on the register of Bonds or (at the option of each
holder of at least U.S.$1,000,000 principal amount of Bonds)
by wire transfer to an account with a bank in New York City
or London designated by such holder by the record date for
such Interest Payment Date.  The record date for each
Interest Payment Date will be the 15th day before such
Interest Payment Date.

(c)  If and to the extent Argentina shall default in the payment of the interest due on any Interest Payment Date and such default shall not be cured within 30 days, such overdue interest shall (unless paid together with principal of this Bond in full other than on an Interest Payment Date) be paid to the person in whose name this Bond is registered at the close of business in New York City on a subsequent record date (which shall be not less than five Business Days (as defined herein) before the date of payment of such overdue interest) established by notice given by mail and publication by or on behalf of Argentina to Bondholders not less than 15 days before such subsequent record date.  If interest is paid together with principal in full on a date which is not an Interest Payment Date, such interest shall be paid upon presentation and surrender of this Bond to the Fiscal Agent in New York City as provided in subparagraph (a) above.

(d)  All payments with respect to this Bond will be made in such coin or currency of the United States of America as at the time of payment is legal tender therein for the payment of public and private debts.

(e)  If the due date for payment of any amount of principal of, or interest on, this Bond (or any additional amounts under Paragraph 5 below relating thereto) is not a Business Day (or, in the case of any such payment at the office of a Paying Agent outside New York City, is a day on which banks are required or authorized to close at such location), then payment need not be made until the next day which is a Business Day (or, in the case of any such payment at the office of a Paying Agent outside New York City, is a day on which banks are not required or authorized to close at such location), and the holder shall not be entitled to any further interest or other payment in respect of any such delay.  In addition, if on the Bond Maturity Date, any amount of principal of, and interest on, this Bond due on such date is received by the Fiscal Agent on such date, but after 10:00 A.M. (local time) in any place of payment, the Fiscal Agent shall not be required to make payment on the Bond Maturity Date, may elect to pay such amount of principal and interest on the next Business Day and shall not be liable for any interest on funds received by it, and the holder of this Bond shall not be entitled to any further interest or other payment in respect of any such delay.

*[3.   Rate of Interest.

(a)   The Bonds shall bear interest at a Rate of Interest (as defined below) determined on the basis of the provisions set forth below.   Interest shall be payable in arrears on each Interest Payment Date.   Interest shall be computed on the basis of a year of 360 days composed of twelve months of 30 days each and, in the case of an incomplete month, the number of days elapsed (without taking into account any postponement of any Interest Payment Date which falls on a day that is not a Business Day).

The rate of interest payable from time to time in respect of the principal of this Bond which is not overdue is 4.00% per annum from [10] until [11], 4.25% per annum from [11] until [12], 5.00% per annum from [12] until [13], 5.25% per annum from [13] until [14], 5.50% per annum from [14] until [15], 5.75% per annum from [15] until [16] and 6.00% per annum thereafter (such rates of interest are collectively referred to as the "Rate of Interest").

(b)   Subject to the provisions of Paragraph 2(e) hereof, in the event that any principal or interest on this Bond, or any other amount payable hereunder is not paid when due, Argentina shall pay interest (to the extent permitted by

---

*      For Par Bonds only.

10.    Insert the date which is the earlier of the Exchange Date and March 31, 1993.

11.    Insert the date which is one year after the earlier of the Exchange Date and March 31, 1993.

12.    Insert the date which is two years after the earlier of the Exchange Date and March 31, 1993.

13.    Insert the date which is three years after the earlier of the Exchange Date and March 31, 1993.

14.    Insert the date which is four years after the earlier of the Exchange Date and March 31, 1993.

15.    Insert the date which is five years after the earlier of the Exchange Date and March 31, 1993.

16.    Insert the date which is six years after the earlier of the Exchange Date and March 31, 1993.

applicable law) on such unpaid principal or interest or
unpaid other amount from the date such principal or interest
or other amount is due until the date such principal or
interest or other amount is paid in full, payable on demand,
at a rate per annum equal to the sum of 1% plus the Rate of
Interest as determined from time to time in accordance with
Paragraph 3(a) above.

As used herein, "Interest Payment Date" means (i)
[    [17]    ], (ii) [    [18]    ], (iii) each successive
[    [19]    ] and [    [19]    ] of each calendar year through
[    [20]    ] 202_, (iv) the Bond Maturity Date, and (v) the
date on which the principal amount of this Bond is paid in
full.

As used herein, "Bond Maturity Date" means [21] or,
if such date is not a Business Day, then the first Business
Day following such date.

As used herein, "Business Day" means a day on which
(i) dealings are carried on in the London interbank market,
and (ii) banks are not required or authorized to close in New
York City; except that, with respect to the Bond Maturity
Date, the term "Business Day" shall mean a day on which (x)
the United States Department of the Treasury and the Federal
Reserve Bank of New York are not closed, (y) banks are not
required or authorized to close in New York City and (z)
dealings are carried on in the London interbank market.

_____

17.   Insert the date which is the six-month anniversary of
      the earlier of the Exchange Date and March 31, 1993.

18.   Insert the date which is the 8-month anniversary of the
      earlier of the Exchange Date and March 31, 1993.

19.   Insert the dates which are respectively the 14-month and
      20-month anniversaries of the earlier of the Exchange
      Date and March 31, 1993.

20.   Insert the date which is four months prior to the
      earlier of the 30th anniversary of the Exchange Date and
      March 31, 2023.

21.   Insert the date which is the earlier of the 30th
      anniversary of the Exchange Date and March 31, 2023.

**[3.   Rate of Interest.

(a)   For purposes of calculating the rate of interest payable on the Bonds, Argentina, pursuant to the Fiscal Agency Agreement, has appointed Citibank, N.A. as Calculation Agent.   The rate of interest payable from time to time in respect of the Bonds (the "Rate of Interest") will be determined on the basis of the following provisions:

On the second London Banking Day (as defined below) (an "Interest Determination Date") before the commencement of an Interest Period (as defined herein), other than the second Interest Period and the Interest Period ending on the Bond Maturity Date, the Calculation Agent will determine the rate per annum at which deposits in U.S. Dollars for an interest period of six months commencing in two London Banking Days from such Interest Determination Date are offered by each of the banks named on the Reuters Screen LIBO Page to leading banks in the London interbank market as quoted on the Reuters Screen LIBO Page at 11:00 A.M. (London time) on such Interest Determination Date.   The Rate of Interest for such Interest Period shall, except as provided below, be 13/16% per annum above the average (rounded upward, if not a whole multiple of 1/16%, to the nearest 1/16%) of such offered quotations (being at least two) as displayed on the Reuters Screen LIBO Page and as determined by the Calculation Agent.   The term "London Banking Day" means a day on which banks are open for business in London and dealings are carried on in the London interbank market.

If, (a) on any Interest Determination Date, the Reuters Screen LIBO Page is not being displayed, or only one such offered quotation appears or (b) the relevant Interest Period is the Second Interest Period hereunder or the Interest Period ending on the Bond Maturity Date, then the following rule shall apply:

(i)   The Calculation Agent shall request the principal London office of each of the Reference Banks (as defined herein) to provide the Calculation Agent with the rate per annum at which deposits in U.S. Dollars for the relevant Interest Period commencing in two London Banking Days from the Interest Determination Date are offered by each of them to leading banks in the London interbank market in an amount substantially equal to U.S.$5,000,000 at 11:00 A.M. (London time) on such Interest Determination Date.   The Rate of Interest for such Interest Period shall, except as provided below, be 13/16% per annum above the average (rounded upward, if not a whole multiple of 1/16%, to the nearest 1/16%) of such offered quotations as determined by the Calculation Agent.

---

**   For Discount Bonds only.