(ii)   If only two of the Reference Banks provide such offered quotations, the Rate of Interest for the relevant Interest Period shall be determined as described above on the basis of the offered quotations of those Reference Banks providing such quotations.

(iii)   If none or only one of the Reference Banks provides the Calculation Agent with an offered quotation, the Rate of Interest for the relevant Interest Period shall be the rate per annum which the Calculation Agent determines to be either (A) 13/16% per annum above the arithmetic mean of the U.S. Dollar lending rates which leading New York City banks, selected by the Calculation Agent after consultation with an Authorized Official of Argentina, are quoting at 11:00 A.M. (London time) on the Interest Determination Date for the relevant Interest Period to the principal London offices of the Reference Banks or those of them (being at least two in number) to which such quotations are, in the opinion of the Calculation Agent, being so made or (B) in the event that the Calculation Agent cannot obtain at least two such quotations, 13/16% per annum above the lowest U.S. Dollar lending rate which leading banks in New York City, selected by the Calculation Agent after consultation with an Authorized Official of Argentina, are quoting on the Interest Determination Date to leading international banks for the relevant Interest Period; provided that if the banks selected as aforesaid by the Calculation Agent are not providing the relevant quotations, the Rate of Interest for the next Interest Period shall be the Rate of Interest in effect for the last preceding Interest Period to which the above paragraphs shall have applied.

The term "Reference Banks" means the principal office in London of each of Lloyds Bank Plc, The Bank of Tokyo, Ltd. and Citibank, N.A.   The term "Reuters Screen LIBO Page" means the display designated as Page "LIBO" on the Reuters Monitor Money Rate Service ("Reuters") (or such other page as may replace, for the purpose of displaying London interbank offered rates of major banks, the LIBO page on that service).

As used herein, "Interest Payment Date" means (i)
[____[17]____], (ii) [____[18____], (iii) each successive
[____[19]____] and [____[19]____] of each calendar year through
[____[20]____], 202_ , (iv) the Bond Maturity Date, and (v) the
date on which the principal amount of this Bond is paid in
full. If an Interest Payment Date falls on any day which is
not a Business Day, such Interest Payment Date will be
postponed to the next day which is a Business Day unless such
next succeeding Business Day occurs in a subsequent calendar
month in which case such Interest Payment Date will be the
next preceding Business Day.

As used herein, "Bond Maturity Date" means
[____21____] or, if such date is not a Business Day, the next
following Business Day.

As used herein, "Business Day" means a day on which
(i) dealings are carried on in the London interbank market,
and (ii) banks are not required or authorized to close in New
York City; except that, with respect to the Bond Maturity
Date, the term "Business Day" shall mean a day on which (x)
the United States Department of the Treasury and the Federal
Reserve Bank of New York are not closed, (y) banks are not
required or authorized to close in New York City and (z)
dealings are carried on in the London interbank market.

---

17. Insert the date which is the 6-month anniversary of the
     earlier of the Exchange Date and March 31, 1993.

18. Insert the date which is the 8-month anniversary of the
     earlier of the Exchange Date and March 31, 1993.

19. Insert the dates which are respectively the 14-month and
     20-month anniversaries of the earlier of the Exchange
     Date and March 31, 1993.

20. Insert the date which is 4 months prior to the earlier
     of the 30th anniversary of the Exchange Date and
     March 31, 2023.

21. Insert the date which is the earlier of the 30th
     anniversary of the Exchange Date and March 31, 2023.

As used herein, "Interest Period" means the period beginning on (and including) [  [22]  ] and ending on (but excluding) the first Interest Payment Date and each successive period beginning on (and including) an Interest Payment Date and ending on (but excluding) the next succeeding Interest Payment Date.

(b)  The Calculation Agent will, as soon as possible after 11:00 A.M. (London time) on each Interest Determination Date, determine the Rate of Interest and calculate the amount of interest payable on each U.S.$1,000 (the "Minimum Multiple") in principal amount of Bonds (the "Interest Amount") for the relevant Interest Period.  The Interest Amount shall be calculated by (i) applying the Rate of Interest to the Minimum Multiple, (ii) multiplying such amount by the actual number of days in the Interest Period and (iii) dividing by 360 and rounding to the nearest cent. The interest payable on unpaid principal amounts of Bonds shall be calculated by multiplying the Interest Amount by a fraction, the numerator of which is the unpaid principal amount of such Bond and the denominator of which is the Minimum Multiple and by rounding the resulting figure to the nearest U.S. Dollar (half a U.S. Dollar being rounded upwards).  The determination of the Rate of Interest and the Interest Amount by the Calculation Agent shall, in the absence of manifest error, be final and binding upon all parties.

(c)  The Calculation Agent will cause notice of the Rate of Interest and the Interest Amount for each Interest Period and the relevant Interest Payment Date to be given to the Fiscal Agent, to the Luxembourg Stock Exchange or any other exchange on which the Bonds are listed (for so long as the Bonds are listed thereon) and to Argentina and shall use its best efforts to cause the Rate of Interest and the Interest Amount for each Interest Period and the relevant Interest Payment Date to be published in accordance with the notice provisions contained herein as soon as possible after each Interest Determination Date but in no event later than the fifth Business Day thereafter.

---

22.  Insert the date which is the earlier of the Exchange Date and March 31, 1993.

(d)  Argentina agrees that, so long as any of the Bonds remains outstanding (or, if earlier, until all of the Bonds have become due and payable (whether at stated maturity, upon call for redemption or otherwise) and moneys for the payment thereof and all other amounts payable with respect to the Bonds shall have been made available at the corporate trust office of the Fiscal Agent), there shall at all times be three Reference Banks and a Calculation Agent. In the event that (i) any such bank is unable or unwilling to continue to act as a Reference Bank or the Calculation Agent (as the case may be) or (ii) in case the Calculation Agent fails duly to establish the Rate of Interest for any Interest Period, in accordance with the Fiscal Agency Agreement Argentina shall appoint another leading bank active in the London interbank market (other than BCRA or any Argentine Bank) to act as a Reference Bank or Calculation Agent (as the case may be) in its place.  The Calculation Agent may not resign its duties without a successor having been appointed.

(e)  In the event that any principal or interest on this Bond, or any other amount payable hereunder is not paid when due, Argentina shall pay interest (to the extent permitted by applicable law) on such unpaid principal or interest or unpaid other amount from the date such principal or interest or other amount is due until the date such principal or interest or other amount is paid in full, payable on demand, at a rate per annum equal to the sum of 1% plus the Rate of Interest as determined from time to time in accordance with Paragraph 3(a) above.]

4.  <u>Optional Redemption and Repurchase</u>.

(a)  <u>Optional Redemption of Bonds</u>.  (i)  The Bonds may be redeemed on any Interest Payment Date, at the option of Argentina, in whole or in part, without premium or penalty, upon notice as described below, at a redemption price equal to the principal amount thereof, together with the amount of interest accrued and unpaid as of the date of the redemption; <u>provided, however</u>, that no default in the payment of principal of, or interest on, any of the Bonds or the Other Bonds (as defined herein) has occurred and is continuing; <u>provided further</u> that if, at the time of such redemption, less than the entire amount of [Par Bonds][23] [Discount Bonds][24] of both Series is redeemed, [Par Bonds][23] [Discount Bonds][24] of each Series shall be redeemed on a pro rata basis based on the outstanding principal amount of the [Par Bonds][23] [Discount Bonds][24].

---

23.  For Par Bonds only.

24.  For Discount Bonds only.

As used in this Bond:

"DMK Bonds" means the Republic of Argentina DMK Par Series Bonds Due 202_ and the Republic of Argentina DMK Discount Series Bonds Due 202_.

"Floating Rate Bonds" means the Republic of Argentina Floating Rate Bonds Due 200_, Series L and Series U;

"Other U.S. Bonds" means Discount Bonds and Par Bonds of any Series other than that of the Bonds;

"Other Bonds" means the Floating Rate Bonds, the Other U.S. Bonds and the DMK Bonds; and

"Series" means:

(a)   for the Discount Bonds, the USD Discount Series L and USD Discount Series U; and

(b)   for the Par Bonds, the USD Par Series L and USD Par Series U.

(ii)   Notice of any redemption of Bonds shall be given by mail and by publication, not less than 30 nor more than 60 days before the date fixed for redemption. Notice having been given, the principal amount of each Bond (or portion thereof) called for redemption shall become due and payable on the date fixed for redemption (as provided herein upon presentation and surrender of such Bond on the date of redemption) in accordance with the provisions for payment of principal in Paragraph 2(a) hereof. In the case of any Bond redeemed only in part, a new Bond for the portion thereof not redeemed shall be delivered in exchange therefor.

(iii)   From and after the redemption date for any Bond (or portion thereof), if moneys for the redemption of such Bond (or portion thereof) shall have been made available as provided herein, such Bond (or portion thereof) shall cease to bear interest, and the only right of the holder of such Bond shall be to receive payment of the redemption price, and in the case of a Bond redeemed only in part, to receive a new Bond for the portion thereof not redeemed.

(iv)   For purposes of this Bond, a default in the payment of principal of, or interest on, the Bonds or any Other Bonds which has occurred shall be deemed to be continuing until Argentina has deposited, or caused to be deposited in accordance with Section 5(b) of the Fiscal Agency Agreement,

or Section 5(b) of the DMK Fiscal Agency Agreement or
Section 6(b) of the Floating Rate Bond Fiscal Agency Agreement,
as the case may be (or, in the case of the Bonds, the Other
U.S. Bonds and the DMK Bonds, if the Collateral Agent has
deposited amounts with the Fiscal Agent in accordance with
Section 4.04 of the Collateral Pledge Agreement with respect to
such Series of Bonds, the Other U.S. Bonds or the DMK Bonds, as
the case may be), amounts sufficient to pay the principal
and/or interest due on such Bonds or Other Bonds to the date of
payment of such principal and/or interest.

(b)  Repurchase of Bonds.  Argentina or any Argentine
Governmental Agency may for any consideration (whether in the
form of cash, debt securities, investments, equity in
privatized companies or otherwise) at any price and time
repurchase Bonds, by tender (available to all holders of Bonds
and the other Series of [Par Bonds][25] [Discount Bonds][26]
alike) or in the open market or otherwise; provided in each
case that:

(A)  neither Argentina nor any Argentine Governmental
Agency (other than an Argentine Bank (i) for its trading
account in the ordinary course of business or (ii) for the
account of customers that are not Argentine Governmental
Agencies) may purchase, directly or indirectly, Bonds for
cash or any form of Indebtedness of Argentina or any
Argentine Governmental Agency so long as a default in the
payment of principal of, or interest on, any of the Bonds
or the Other Bonds has occurred and is continuing; and

(B)  any definitive Bond purchased or otherwise
acquired by, or on behalf of, Argentina must be
surrendered to the Fiscal Agent, the Registrar or a
Transfer Agent for cancellation and, if Argentina shall
purchase or otherwise acquire any beneficial interest in a
Global Bond, Argentina shall, in the case of the Non-U.S.
Global Bond, request Euroclear or Cedel, as the case may
be, to cancel such beneficial interest and shall request
the Fiscal Agent to direct the Common Depositary or the
Registrar, as the case may be, to reflect such
cancellation of such beneficial interest on the Schedule
to such Global Bond or in the register for the Bonds, as
the case may be, each such surrender or request for
cancellation to be made by Argentina promptly after such
purchase or acquisition; provided, however, that Argentina
shall not be required to cancel any Bond purchased or

---

25.  For Par Bonds only.

26.  For Discount Bonds only.

otherwise acquired by, or on behalf of, Argentina if (i) such Bond was purchased or otherwise acquired for purposes of securing External Indebtedness of Argentina incurred in connection with, or on or after the date of, such purchase or acquisition or (ii) such Bond is promptly exchanged for unsecured Indebtedness of Argentina issued to Argentine Banks on the Exchange Date in exchange for Eligible Debt of such Argentine Banks, if any.

If Argentina shall purchase or otherwise acquire any Bond, such purchase or other acquisition shall not operate as or be deemed for any purpose to be a discharge or satisfaction of the indebtedness represented by such Bond until the provisions in clause 4(b)(B) above have been met.

If any such Bond is purchased or otherwise acquired by, or on behalf of, Argentina, Argentina shall notify the Fiscal Agent of such purchase or other acquisition, and, if such Bond is in definitive form, request that the Fiscal Agent notify the Registrar of such purchase or other acquisition.

5.  Taxes: Payment of Additional Amounts.

(a)  Payments Free and Clear.  Any and all payments by Argentina hereunder shall be made free and clear of and without deduction for any and all present or future taxes, levies, assessments, imposts, deductions, charges or withholdings, and all liabilities with respect thereto (i) imposed by Argentina (or any political subdivision or taxing authority thereof or therein or any organization or federation of which Argentina is at any time a member) (all such taxes, levies, imposts, deductions, charges, withholdings and liabilities being "Argentine Taxes") or (ii) imposed by any other jurisdiction (or any political subdivision or taxing authority thereof or therein or any organization or federation of which such jurisdiction is at any time a member) from or through which any payment hereunder is made (all such taxes, levies, imposts, deductions, charges, withholdings and liabilities being "Paying Agency Taxes" and, together with the Argentine Taxes, the "Applicable Taxes"); provided, however, that Applicable Taxes shall not include, (x) Argentine Taxes that are (A) imposed on an Argentine Person or (B) imposed on a Person who is deemed to have a permanent establishment in Argentina to which this Bond, and the income therefrom, is attributable (unless this Bond is being held or booked or payments hereunder are received in Argentina solely to enforce any rights hereunder or exercise any rights hereunder that otherwise would not, in the opinion of independent counsel of

recognized standing, be exercisable) or (y) Paying Agency
Taxes that (A) are imposed by reason of any connection
between the Purchaser and the taxing jurisdiction other than
entering into the Principal Bond Agreements, holding the
Principal Bonds or receiving payment thereon, (B) are
required to be deducted or withheld by any Paying Agent from
a payment on this Bond if such payment can be made without
such deduction or withholding by any other Paying Agent or
(C) would not have been imposed but for the presentation by
the holder of this Bond for payment more than 30 days after
the date on which such payment became due and payable or on
which payment thereof was duly provided for, whichever occurs
later.  If Argentina or a Paying Agent shall be required by
law to deduct any Applicable Taxes from or in respect of any
sum payable by it hereunder:

(1)  the sum payable shall be increased as may be
necessary so that after making all required deductions of
such Applicable Taxes (including deductions of such
Applicable Taxes applicable to additional sums payable
under this Section), the holder of this Bond receives an
amount equal to the sum it would have received had no
such deductions of such Applicable Taxes been made;

(2)  Argentina or such Paying Agent shall make such
deductions; and

(3)  Argentina or such Paying Agent shall pay the
full amount deducted to the relevant taxing authority or
other authority in accordance with applicable law.

(b)  <u>Payment of Stamp Taxes</u>.  In addition, Argentina
agrees to pay any present or future stamp, court or
documentary taxes or any other excise or property taxes,
charges or similar levies and any related interest or
penalties incidental thereto imposed by Argentina or any
political subdivision or taxing authority thereof or therein
which arise from any payment made by Argentina or a Paying
Agent hereunder or from the execution, delivery, performance,
enforcement or registration of, or otherwise with respect to,
the Bonds and the other Principal Bond Agreements
(hereinafter referred to as "<u>Other Applicable Taxes</u>").

(c)  <u>Tax Certificates</u>.  Within 30 days after the
date of any payment of Applicable Taxes or Other Applicable
Taxes by Argentina or a Paying Agent, Argentina or such
Paying Agent will furnish to the Fiscal Agent the original or
a certified copy of a receipt evidencing payment thereof.
The Fiscal Agent shall furnish each such Bondholder to which
Argentina made or is obligated to make a payment that

resulted in such Applicable Taxes or Other Applicable Taxes with, if practicable, an original of such receipt or certified copy or, if insufficient originals are available for distribution, shall provide each such Bondholder with access to an original.

(d) <u>Survival</u>.  Without prejudice to the survival of any other agreement of Argentina hereunder, the agreements and obligations of Argentina contained in this Paragraph 5 shall survive the payment in full of all payment due hereunder or under the other Principal Bond Agreements and the performance of any other obligations hereunder or thereunder.

6.  <u>Collateral</u>.

(a) <u>Principal Collateral</u>.  Argentina has pledged and assigned to the Federal Reserve Bank of New York as Collateral Agent (such agent and its successors as such Collateral Agent being hereinafter called the "<u>Collateral Agent</u>"), for the benefit of the registered holders, Pledged Securities (as defined in the Collateral Pledge Agreement) (the "<u>Principal Collateral</u>"), having an aggregate amount payable at maturity (including principal, interest and interest added to principal) equal to the principal amount of the Bonds and maturing on or before the stated maturity date of the Bonds, securing payment of the principal amount of the Bonds at stated maturity only.  The Collateral Agent will hold the Principal Collateral pursuant to a Collateral Pledge Agreement dated as of _____, 199_ (as amended from time to time, the "<u>Collateral Pledge Agreement</u>"), the terms of which are hereby incorporated herein by reference.

Pursuant to the Collateral Pledge Agreement, if Argentina has not, on the Bond Maturity Date, made available to the Fiscal Agent in immediately available funds the full principal amount required to be paid at maturity of the Bonds, the Collateral Agent shall cause the proceeds of the Principal Collateral to be remitted to the Fiscal Agent to be held in trust for payment of the principal of the Bonds. With respect to the Principal Collateral, failure by Argentina to pay the principal amount of the Bonds at stated maturity is the only event giving rise to any right of recourse on the part of the Fiscal Agent or any Bondholder to the Principal Collateral, and the Principal Collateral is not available to the Fiscal Agent or any Bondholder at any time before the stated maturity of the Bonds.  In particular, nonpayment by Argentina of interest and other amounts on the Bonds at any time or of principal of the Bonds, on redemption, acceleration or otherwise, before stated maturity

does not give rise to any right on the part of the Fiscal
Agent or any Bondholder to recourse to the Principal
Collateral, and the Principal Collateral is not available as
a result thereof.

(b) <u>Interest Collateral</u>. Argentina has pledged to
and deposited with the Collateral Agent, for the benefit of
the Bondholders, Cash or Permitted Investments (both terms as
defined in the Collateral Pledge Agreement) (the "<u>Interest
Collateral</u>" and, together with the Principal Collateral, the
"<u>Collateral</u>") in the amount specified for the Bonds in the
Collateral Pledge Agreement securing payment of interest on
the Bonds. The Collateral Agent will hold the Interest
Collateral pursuant to the Collateral Pledge Agreement.
Earnings on the Interest Collateral will be remitted to
Argentina from time to time in accordance with the Collateral
Pledge Agreement.

Pursuant to the Collateral Pledge Agreement, if
Argentina has not, within 30 days after any Interest Payment
Date, made available to the Fiscal Agent in immediately
available funds the full amount of interest required to be
paid in respect of the Bonds on such Interest Payment Date,
the Collateral Agent shall, at the request of the Fiscal
Agent (acting upon the instructions of the registered holders
of at least 25% in aggregate principal amount of the Bonds),
cause proceeds of the Interest Collateral to be remitted to
the Fiscal Agent for the payment of interest due and payable
on the Bonds (without taking into account any interest on
overdue amounts).

(c) <u>Collateral Pledge Agreement; Release of
Collateral, Etc</u>. Copies of the Collateral Pledge Agreement
are on file and available for inspection at the corporate
trust office of the Fiscal Agent in the Borough of Manhattan,
City of New York and at such other offices as are from time
to time designated as Paying Agents for the Bonds, and
reference thereto is hereby made for a description of the
rights and limitation of rights thereunder of the holders of
the Bonds and the duties of the Collateral Agent. The Other
U.S. Bonds also enjoy the benefit of the Collateral Pledge
Agreement with respect to separate collateral. The
Collateral Pledge Agreement contains provisions for the
release from time to time of Principal Collateral and
Interest Collateral. The holders of the Bonds will be
entitled to the benefits of, be bound by, and be deemed to
have notice of, all of the provisions of the Collateral
Pledge Agreement. The Collateral Agent is not a trustee for
the Bondholders and does not have the same responsibilities
or duties to act for such holders as a trustee. Neither the

Federal Reserve Bank of New York, as the initial Collateral
Agent, nor any successor Collateral Agent shall have any
obligation hereunder or under the Collateral Pledge Agreement
to make any payment of principal of, or interest on, this
Bond to the holder or to the Fiscal Agent other than the
remittance of the proceeds (if any) of the Principal
Collateral and the Interest Collateral to the Fiscal Agent in
accordance with the terms of the Collateral Pledge
Agreement.  Each Bondholder, by acceptance of its Bond or
Bonds, consents to the appointment of the Collateral Agent as
its true and lawful attorney-in-fact as provided in the
Collateral Pledge Agreement.

          The pledge of the Principal Collateral and Interest
Collateral pursuant to the Collateral Pledge Agreement
constitutes and will constitute, so long as any Bond remains
outstanding, a valid and perfected first priority security
interest in favor of the Collateral Agent on behalf of the
registered holders in the Principal Collateral and Interest
Collateral.

          7.  Valid Obligations.

          Argentina represents and agrees that all action has
been taken and all conditions precedent have occurred so that
this Bond and all the obligations herein contained shall be
valid and legally enforceable obligations of Argentina in
accordance with their terms, including without limitation all
acts or things necessary or appropriate under the
Constitution, laws and regulations of Argentina.

          8.  Payment of Unclaimed Amounts.

          Subject to Section 11(b) of the Fiscal Agency
Agreement, any moneys paid by Argentina, or remitted by the
Collateral Agent, to the Fiscal Agent (or remitted by the
Fiscal Agent to any other Paying Agent) for payment of
principal of, or interest on, any of the Bonds shall be held
in trust by the Fiscal Agent or such Paying Agent for the
registered holders to be paid to such registered holders in
accordance with Sections 5(a) and 5(b)(i) of the Fiscal
Agency Agreement.  Any moneys so held remaining unclaimed at
the end of two years after such principal or interest
(including additional amounts under Paragraph 5 above) shall
have become due and payable (whether at maturity or upon call
for redemption or otherwise) shall be repaid to Argentina on
its written demand, and upon such repayment such trust shall
terminate and all liability of the Fiscal Agent and each
Paying Agent with respect to such moneys shall cease, and a

registered holder presenting a claim therefor shall
thereafter look only to Argentina for payment thereof;
provided that such repayment shall not limit in any way any
obligation which Argentina may have to pay the principal of,
or interest on, the Bonds as the same shall become due.

9.   Covenants.

(a)   Affirmative Covenants.   Argentina covenants and
agrees that, so long as any Bond remains outstanding,
Argentina shall:

(i)   Maintenance of Argentine Authorizations.   Duly
obtain and maintain in full force and effect all
Argentine Authorizations necessary under the laws of
Argentina for the performance by Argentina of the Bonds
or any other Principal Bond Agreement or for the validity
or enforceability of the Bonds or of the other Principal
Bond Agreements and duly take all necessary and
appropriate governmental and administrative action in
Argentina, in order for Argentina to be able to make all
payments to be made by Argentina under the Bonds and the
other Principal Bond Agreements.

(ii)   Pari Passu.   Ensure that at all times its
obligations hereunder constitute unconditional general
obligations of Argentina ranking at least pari passu in
priority of payment with (A) all other Indebtedness of
Argentina which by its terms is, or at the option of the
holder thereof may be, payable in a currency other than
Pesos and (B) all obligations of Argentina with respect
to any Indebtedness issued by a Designated Argentine
Governmental Agency which by its terms is, or at the
option of the holder thereof may be, payable in a
currency other than Pesos.

(iii)   Debt Conversion Program.   Maintain the
eligibility of the Bonds for tender in Argentina's debt
conversion program.

(iv)   Maintenance of Membership on International
Financial Institutions.   Maintain at all times its
membership in the IMF, IBRD and IADB and continue to be
eligible to use the general resources of the IMF.

(v)   Annual Economic Report.   Furnish to the Fiscal
Agent sufficient copies of the Annual Economic Report of
BCRA ("Memoria Anual"), or comparable economic
information, and other periodic financial statements of
the debt of Argentina reflecting the aggregate principal

amount of Par Bonds and Discount Bonds which have been purchased or otherwise acquired and not cancelled in accordance with clause (i) of the proviso to Paragraph 4(b)(B) hereof and indicating that such Par Bonds and/or Discount Bonds have been acquired for the purpose of securing External Indebtedness of Argentina incurred in connection with, or on or after the date of, such purchase or acquisition.

(vi) Maintenance of Agents. Until two years after the later of the date on which the principal of all the Bonds shall have become due and payable (whether at maturity or upon call for redemption or otherwise) and the date on which moneys for the payment thereof and of all interest on the Bonds shall have been made available to the Fiscal Agent, to maintain a Fiscal Agent, an Authenticating Agent, [a Calculation Agent,]* a Registrar and Transfer Agent in the Borough of Manhattan, City of New York (which in each case shall be a commercial bank or trust company (other than BCRA or an Argentine Bank), or any affiliate thereof, having a combined capital and surplus of at least U.S.$1,000,000,000 (or the equivalent in other currencies), legally qualified to act as such Agent and having an established place of business in the Borough of Manhattan, City of New York). Subject to the foregoing, Argentina reserves the right at any time to vary or terminate the appointment of the Agents in the manner, and to the extent, provided in Paragraph 16 hereof and in the Fiscal Agency Agreement.

[(vii) Listing. Make application for listing the Bonds on the Luxembourg Stock Exchange and use its best efforts (x) to ensure listing thereon and (y) once the Bonds are so listed, to maintain the listing of the Bonds thereon or, if maintenance thereon is not practicable, on another internationally recognized securities exchange.]27

(b) Negative Covenants. For so long as any of the Bonds remain outstanding, Argentina shall not:

(i) Directly or indirectly seek any restructuring or rescheduling of the Bonds or any provisions thereof, nor will it directly or indirectly seek or request any loans, advances, extensions of credit or other financial accommodation from any holders of Bonds or any affiliates thereof based on such holdings.

---

* Discount Bonds only.

27. Insert for USD Discount Series L and USD Par Series L.

(ii)   Sell, assign or otherwise transfer any Par Bond or Discount Bond purchased or otherwise acquired by, or on behalf of, Argentina and not cancelled in accordance with Paragraph 4(b) hereof; _provided_, that Argentina shall be permitted to assign or otherwise transfer any such Par Bond or Discount Bond in connection with the exchange contemplated in Paragraph 4(b)(B) hereof; and _provided_, _further_, that Argentina shall be permitted to assign or otherwise transfer any such Par Bond or Discount Bond, or any interest therein, in connection with any transaction in which such Par Bond or Discount Bond is used to secure External Indebtedness incurred in connection with, or on or after the date of, the purchase or other acquisition of such Par Bond or Discount Bond by or on behalf of Argentina.

[(iii)  Make, nor grant permission to make, application to list the Bonds on any stock exchange.]28

10.   _Events of Default_.

If any of the following events (each an "_Event of Default_") shall occur and be continuing:

(a)   interest on any Bond is not paid when due and such default continues for a period of at least 30 days; or

(b)   Argentina fails to pay the principal amount of any Bond called for redemption when due for a period of 15 days; or

(c)   the pledge of the Principal Collateral or of the Interest Collateral under the Collateral Pledge Agreement ceases to constitute a valid and perfected first priority security interest in any such Collateral; or

(d)   Argentina defaults in the performance of any other obligation contained in the Bonds or the other Principal Bond Agreements relating to the Bonds and such default shall continue for a period of 90 days after written notice thereof shall have been given to Argentina

---

28.   USD Discount Series U and USD Par Series U only.

at the office of the Fiscal Agent by any registered
holder; or

(e) (i) the holders of 25% or more in aggregate
outstanding principal amount of any issue or series of
Publicly Issued External Indebtedness of Argentina or any
Designated Argentine Governmental Agency (including any
Other Bonds), as a result of any failure to pay the
principal of, or interest on, such Publicly Issued
External Indebtedness, accelerate such Publicly Issued
External Indebtedness or declare such Publicly Issued
External Indebtedness to be due and payable, or required
to be prepaid (other than by a regularly scheduled
required prepayment), prior to the stated maturity
thereof and such acceleration, declaration or prepayment
shall not have been annulled or rescinded within 30 days
thereof or (ii) Argentina or any Designated Argentine
Governmental Agency fails to pay the principal of any
such Publicly Issued External Indebtedness when due
(after expiration of any applicable grace period), or
(iii) Argentina fails to pay any interest when due under
any Other Bonds (after expiration of any applicable grace
period); or

(f) Argentina declares a moratorium with respect to
the payment of principal of, or interest on, Publicly
Issued External Indebtedness of Argentina; or

(g) any writ, execution, attachment or similar
process shall be levied against all or any substantial
part of the assets of Argentina in connection with any
judgment in respect of External Indebtedness (other than
External Indebtedness under the Debt Agreements) for the
payment of money exceeding U.S.$100 million (or its
equivalent in other currencies) and shall remain
unsatisfied, undischarged and in effect for a period of
45 consecutive days without a stay of execution, unless
the same is adequately bonded or is being contested by
appropriate proceedings properly instituted and
diligently conducted and, in either case, such process is
not being executed against such assets; or

(h) the validity of the Bonds or the other
Principal Bond Agreements relating thereto shall be
contested by Argentina;

then, if such event is continuing, registered holders of 25% or more in aggregate outstanding principal amount of the Bonds may, by written demand to Argentina at the office of the Fiscal Agent, declare the Bonds immediately due and payable, whereupon the entire unpaid principal amount of the Bonds, all interest accrued and unpaid thereon and all other amounts payable in respect of the Bonds shall become and be forthwith due and payable, without presentation, demand, protest or further notice of any kind, all of which are hereby expressly waived by Argentina. Any such declaration shall be made by written demand to Argentina at the office of the Fiscal Agent in New York City. Upon receipt by the Fiscal Agent of such written demand, the Fiscal Agent shall give notice thereof to Argentina, as provided in the Fiscal Agency Agreement, and to the holders of the Bonds, by mail and publication. After any such declaration, if all amounts then due with respect to the Bonds are paid (other than amounts due solely because of such declaration) and all other defaults with respect to the Bonds are cured, such declaration may be annulled and rescinded by registered holders of more than 50% in aggregate outstanding principal amount of the Bonds (or such other percentage required at a meeting of Bondholders in accordance with Paragraph 12 hereof) by written notice thereof to Argentina at the office of the Fiscal Agent.

11.  Transfer, Exchange for New Bonds and Replacement.

(a)  This Bond is transferable (subject to applicable restrictions in the legend appearing on the face of this Bond and in the Fiscal Agency Agreement) by the registered holder hereof or by his attorney-in-fact duly authorized in writing, at the office of the Registrar or of any Transfer Agent, upon surrender of this Bond for cancellation duly endorsed by, or accompanied by a written instrument of transfer, in the form set forth at the end of these Terms and Conditions or in such other form satisfactory to the Registrar duly executed by, the registered holder or his attorney-in-fact duly authorized in writing, and thereupon one or more new Bonds in Authorized Denominations for the same aggregate principal amount will be issued in the name of the transferee or transferees in exchange therefor.

(b)  This Bond (i) may be transferred and sold only as a unit that includes all interest and principal components and may not be separated, directly or indirectly, into component interest and principal portions and (ii) may not be converted directly or indirectly into unregistered form.

(c)   This Bond is exchangeable (subject to applicable restrictions contained in the Fiscal Agency Agreement) by the registered holder hereof or by his attorney-in-fact duly authorized in writing at the office of the Registrar or of any Transfer Agent, upon surrender of this Bond for exchange, into one or more new Bonds in Authorized Denominations with the same aggregate principal amount, and thereupon such new Bonds will be issued to such registered holder.

(d)   Notwithstanding any other provision of this Bond, the Registrar shall not be required to register the transfer of or exchange this Bond (i) during a period beginning at the opening of business 15 days before the date of transmission of a notice of partial redemption of the Bonds and ending at the close of business on the day of such transmission or (ii) at any time after this Bond has been called for redemption; _provided_ that, with respect to any Bond called for partial redemption, the Registrar shall register the transfer of or exchange such principal amount not subject to redemption.

(e)   Argentina may require payment of a sum sufficient to cover any stamp tax or other governmental charge (other than a stamp tax or governmental charge imposed by Argentina itself) in connection with any such transfer or exchange, but no other charge shall be made in connection with any such transfer or exchange (except for the expenses of delivery other than by regular mail).

(f)   In case of the mutilation, destruction, loss or theft of this Bond, the Registrar, upon surrender to and cancellation by it of the mutilated Bond, or upon receipt of proof satisfactory to it of the destruction, loss or theft of such Bond, and receipt of security or indemnity satisfactory to the Registrar, to the Fiscal Agent, to the Authenticating Agent and to Argentina, shall register, and the Registrar or a Transfer Agent shall deliver, a new Bond of such Series in replacement of such Bond to the person requesting such replacement upon payment by such person of all reasonable expenses associated with obtaining such security or indemnity and issuing and delivering a new Bond (including, without limitation, reasonable legal fees and expenses relating to the preparation, authentication and delivery of such new Bond).

(g)   Prior to the presentment for registration of transfer of this Bond, Argentina and each of the Agents may deem and treat the person in whose name this Bond is

registered as the absolute owner of this Bond (whether or not
this Bond shall be overdue and notwithstanding any notice of
ownership or other writing hereon) for the purpose of
receiving payment hereof or on account hereof and for all
other purposes, and neither Argentina nor any Agent shall be
affected by any notice to the contrary; **provided** that, with
respect to beneficial interests in the Non-U.S. Global Bond,
each person who is shown in the records of the Euroclear
Operator or of Cedel as the holder of a particular principal
amount of such Global Bond shall be treated as the holder of
such principal amount of Bonds for all purposes other than
with respect to receiving notices by mail or payment hereof
or on account hereof.

(h)  All Bonds issued as a result of any transfer,
exchange or replacement of Bonds shall be delivered to the
holder at the office of the Registrar or a Transfer Agent or
(at the risk and, if sent other than by regular mail, expense
of such Bondholder) sent by mail to such address as is
specified by the holder in the request for transfer, exchange
or replacement.

(i)  Argentina has initially appointed each of the
principal offices of Citibank, N.A. in London and of Citibank
(Luxembourg) S.A. in Luxembourg as a Transfer Agent where the
Bonds may be surrendered for transfer, exchange or
substitution.  The Fiscal Agent shall, directly or through an
affiliate, maintain in the Borough of Manhattan, City of New
York, a Registrar in which Bonds executed, authenticated and
delivered as provided herein and in the Fiscal Agency
Agreement, and the transfer, exchange, substitution and
cancellation of such Bonds, shall be registered.

12.  **Meetings of Bondholders; Modification and
Amendments**.

(a)  Upon not less than 15 days' prior notice to the
Fiscal Agent, Argentina may at any time call a meeting of the
Bondholders of any Series pursuant to the notice provisions
of the Fiscal Agency Agreement for any purpose, such meeting
to be held at such time and such place as Argentina shall
determine.  Upon a request in writing made by Bondholders
holding not less than 10% of the aggregate outstanding
principal amount of the Bonds of any Series, the Fiscal Agent
shall convene a meeting of Bondholders of such Series.  Any
such request in writing by Bondholders shall be delivered to
the Fiscal Agent.  Further provisions concerning meetings of
Bondholders are set forth in the Fiscal Agency Agreement.

(b)  Modifications and amendments to the Fiscal
Agency Agreement (subject to the provisions of Section 15 of
the Fiscal Agency Agreement), the Collateral Pledge
Agreement, or the Bonds requiring Bondholder consent may be
made, and future compliance therewith or past default by
Argentina may be waived, with the consent of Argentina and
the registered holders of at least a majority in aggregate
principal amount of the Bonds at the time outstanding, or of
such lesser percentage (determined as provided in
subparagraph (c) below) as may act at a meeting of
Bondholders held in accordance with the provisions of the
Fiscal Agency Agreement; provided that no such modification,
amendment or waiver of the Fiscal Agency Agreement, the
Collateral Pledge Agreement, or any Bond may, without the
consent of the registered holder of each Bond affected
thereby, (i) change the stated maturity of the principal of
or the due date of interest on such Bond; (ii) reduce the
principal of, or interest on, any such Bond; (iii) change the
currency of payment of the principal of, or interest on, any
such Bond; (iv) effect a release of the Collateral from, or
change the priority of, the lien of the Collateral Pledge
Agreement except as contemplated thereby or change the
ratable nature of the security provided thereby; or (v)
reduce the above-stated percentage of aggregate principal
amount of Bonds outstanding or reduce the quorum requirements
or the percentage of votes required for the taking of any
action; and provided further that no modification, amendment
or waiver of the Collateral Pledge Agreement may, without the
consent of the Collateral Agent in addition to Argentina and
the holders required above to take such action, affect the
rights or duties of the Collateral Agent or the Fiscal Agent,
respectively, under the Collateral Pledge Agreement.  Any
modifications, amendments or waivers consented to or approved
at a meeting will be conclusive and binding on all holders of
the Bonds whether or not they have given consent or were
present at such meeting, and on all future holders of Bonds
whether or not notation of such modifications, amendments or
waivers is made upon the Bonds.  Subject to the foregoing
provisions of this Paragraph 12(b), any instrument given by
or on behalf of any holder of a Bond in connection with any
consent to any such modification, amendment or waiver will be
irrevocable once given and will be conclusive and binding on
all subsequent holders of such Bond.

(c)  At a meeting of the Bondholders called for any
of the above purposes, persons entitled to vote a majority in
aggregate principal amount of the Bonds at the time
outstanding shall constitute a quorum, it being understood
that any Bondholder entitled to more than one vote shall not

be required to cast all such votes in the same manner. In the absence of a quorum within 30 minutes of the time approved for such meeting, such meeting may be adjourned for a period of not less than ten days; at the reconvening of any meeting adjourned for lack of a quorum, the persons entitled to vote 25% in aggregate principal amount of the Bonds at the time outstanding shall constitute a quorum for the taking of any action set forth in the notice of the original meeting. At a meeting or an adjourned meeting duly convened and at which a quorum is present as aforesaid, any resolution to modify or amend, or to waive compliance with, any of the covenants or conditions referred to above (other than to make any declaration under Paragraph 10 hereof) shall be effectively passed, subject to the provisos of subparagraph (b) above, if passed by the persons entitled to vote the lesser of (i) a majority in aggregate principal amount of Bonds then outstanding or (ii) 75% in aggregate principal amount of the Bonds represented and voting at the meeting.

(d) So long as Argentina has any interest in any of the Bonds referred to in any notice delivered to the Fiscal Agent by Argentina pursuant to the last sentence of Paragraph 4(b) hereof, no vote may be exercised with respect to such Bond at a meeting of Bondholders or in connection with any consent to any modification, amendment or waiver contemplated in this Paragraph 12.

13.  Notices.

All notices to Bondholders will be given by publication thereof in The Wall Street Journal (Eastern Edition), and the Financial Times (London) (or if either or both of such newspapers is not being published, in at least one leading daily newspaper printed in the English language and with general circulation in New York City or London, as the case may be) [and, so long as the Bonds are listed on the Luxembourg Stock Exchange and it is so required for continued listing thereon, in the Luxemburger Wort (or if such newspaper is not being published, in a daily newspaper of general circulation in Luxembourg]29 or, if publication in [either]29 London [or Luxembourg]29 is not practical, elsewhere in western Europe). In addition, notices to Bondholders required to be mailed shall be mailed by first

---

29. Delete for USD Discount Series U and USD Par Series U.

class, or, if applicable, prepaid, air mail to each
registered holder to the address set forth on the register
kept by the Registrar for the Bonds.  Any such notice shall
be deemed to have been given on the date of such publication
(or, if published more than once, on the date it is first
published) and the day which is three days after such notice
by mail shall have been deposited in the mails.

14.  **Rights and Remedies Cumulative**.

No right or remedy herein conferred upon or reserved
to any Bondholder is intended to be exclusive of any other
right or remedy, and every right and remedy shall, to the
extent permitted by law, be cumulative and in addition to
every other right and remedy hereunder or now or hereafter
existing at law or in equity or otherwise.  The assertion or
employment of any right or remedy hereunder, or otherwise,
shall not prevent the concurrent assertion or employment of
any other appropriate right or remedy.

15.  **Delay or Omission Not Waiver**.

No delay or omission of the Bondholders to exercise
any right or remedy accruing upon any Event of Default shall
impair any such right or remedy or constitute a waiver of any
such Event of Default or an acquiescence therein.  Every
right and remedy given by this Paragraph 15 or by law to the
Bondholders may be exercised from time to time, and as often
as may be deemed expedient, by the Bondholders.

16.  **Maintenance of Paying Agents and Transfer Agents**.

Argentina may vary or terminate the appointment of
any Paying Agent or Transfer Agent at any time and from time
to time upon giving not less than 60 days' notice to the
Fiscal Agent; provided that Argentina shall maintain at all
times at least one Paying Agent in New York City and London.
[In addition, Argentina shall maintain at all times a Paying
Agent and a Transfer Agent in Luxembourg as long as the Bonds
are listed on the Luxembourg Stock Exchange and it is so
required for continued listing thereon.][30]  Notice of any
change in a Paying Agent shall be given to Bondholders in
accordance with Paragraph 13 hereof.

---

30. Delete for USD Discount Series U and USD Par Series U.

17.   Execution.

This Bond may be executed by manual or facsimile signature of an Authorized Official of Argentina and such signature shall be binding notwithstanding that the individual signing in such capacity no longer serves in such capacity at the time of authentication by an Authenticating Agent.  This Bond shall not constitute an obligation of Argentina until the certificate of authentication hereon has been countersigned for identification by an Authenticating Agent.

18.   Jurisdiction and Waiver of Immunity.

(a)  Argentina hereby irrevocably submits to the non-exclusive jurisdiction of any New York State or federal court sitting in New York City, the High Court of Justice in London, any federal court sitting in the City of Buenos Aires and any appellate court from any thereof, in any suit, action or proceeding arising out of or relating to this Bond, and Argentina hereby irrevocably agrees that all claims in respect of such suit, action or proceeding may be heard and determined in such New York State or federal court, in the High Court of Justice in London or any federal court sitting in the City of Buenos Aires.  Argentina irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of any such suit, action or proceeding and any objection to any such suit, action or proceeding whether on the grounds of venue, residence or domicile.  A final judgment in any such suit, action or proceeding shall be conclusive and may be enforced in any other jurisdictions by suit on the judgment or in any other manner provided by law.

(b)  Argentina hereby irrevocably appoints (i) the New York office of Banco de la Nación Argentina (the "New York Process Agent"), with an office on the date hereof at 299 Park Avenue, 2nd floor, New York, New York 10171, United States, and, alternatively, hereby irrevocably appoints CT Corporation System, with an office on the date hereof at 1633 Broadway, 23rd floor, New York, New York 10019, United States (the "Alternate New York Process Agent"), in each case, as its agent to receive, on behalf of itself and its property, service of copies of the summons and complaint and any other process which may be served in any such action or proceeding brought in such New York State or federal court sitting in New York City and (ii) the London office of Banco de la

Nación Argentina (the "London Process Agent", and together
with the New York Process Agent, the "Process Agents"), with
an office on the date hereof at Longbow House, 14-20 Chiswell
Street, London EC1Y 4SD, England, United Kingdom, and
alternatively, hereby irrevocably appoints The Law Debenture
Trust Corporation p.l.c., with an office on the date hereof
at Prince's House, 95 Gresham St., London EC2V 7LY, England,
United Kingdom (the "Alternate London Process Agent" and,
together with the New York Alternate Process Agent, the
"Alternate Process Agents"), in each case, as its agent to
receive on behalf of itself and its property service of
copies of a writ, summons, order, judgment or other document
which may be served in any such action or proceeding brought
in the High Court of Justice in London.  Service of any such
process may be made upon an Alternate Process Agent in lieu
of the applicable Process Agent in any action or proceeding
in any New York State or federal court sitting in New York
City or the High Court of Justice in London if (i) at any
time and for any reason it appears to the party attempting to
serve the process that service of such process upon any
Process Agent as provided above may be ineffective or may not
be feasible and (ii) upon or before the serving of any
process on any Alternate Process Agent, the Alternate Process
Agent and Argentina are notified that service of such process
is to be made on such Alternate Process Agent in accordance
with the provisions of this sentence.  Such service may be
made by mailing or delivering a copy of such process to
Argentina in care of the appropriate Process Agent or
Alternate Process Agent at the address specified above for
such Process Agent or Alternate Process Agents and, in the
case of process served on an Alternate Process Agent, by
depositing a copy of such process in the United States mails,
addressed to Argentina at the address specified in Section 13
of the Fiscal Agency Agreement (such service to be effective
upon the delivery of such process to the Alternate Process
Agent and the depositing of such process in the United States
mails as aforesaid), and Argentina hereby irrevocably
authorizes and directs such Process Agent or Alternate
Process Agents to accept such service on its behalf.  Failure
of any Process Agent or Alternate Process Agent to give
notice to Argentina or failure of Argentina to receive notice
of such service of process shall not affect in any way the
validity of such service on the Process Agent, the Alternate
Process Agent or Argentina.  As an alternative method of
service, Argentina also irrevocably consents to the service
of any and all process in any such suit, action or proceeding
in such New York State or federal court sitting in New York
City or the High Court of Justice in London by the mailing of
copies of such process to Argentina at its address specified

in Section 13 of the Fiscal Agency Agreement.  Argentina
covenants and agrees that it shall take any and all
reasonable action, including the execution and filing of any
and all documents, that may be necessary to continue the
designations of Process Agents and Alternate Process Agents
above in full force and effect, and to cause each Process
Agent and Alternate Process Agent to continue to act as such.

      (c)  Nothing in this Paragraph 18 shall affect the
right of any party to serve legal process in any other manner
permitted by law or affect the right of any party to bring
any action or proceeding against any other party or its
property in the courts of other jurisdictions.

      (d)  To the extent that Argentina has or hereafter
may acquire any immunity (sovereign or otherwise) from
jurisdiction of any court or from any legal process (whether
through service or notice, attachment prior to judgment,
attachment in aid of execution, execution or otherwise) with
respect to itself or its property, Argentina hereby
irrevocably waives such immunity in respect of its
obligations under this Bond and the other Principal Bond
Agreements and, without limiting the generality of the
foregoing, Argentina (A) agrees that the waivers set forth in
this Paragraph 18(d) shall have the fullest scope permitted
under the Foreign Sovereign Immunities Act of 1976 of the
United States and are intended to be irrevocable for purposes
of such act; and (B) consents generally for the purposes of
the State Immunity Act 1978 of the United Kingdom to the
giving of any relief or the issue of any process.
Notwithstanding the foregoing, Argentina shall not waive any
such immunity (1) with respect to the assets which constitute
freely available reserves, pursuant to Article 6 of the
Convertibility Law, the amount, composition and investment of
which will be reflected on the balance sheet and accounting
statement of BCRA consistently prepared pursuant to Article 5
of the Convertibility Law and (2) with respect to property of
the public domain located in the territory of Argentina or
property owned by Argentina and located in its territory
which is dedicated to the purpose of an essential public
service.

     19.  **BCRA Undertaking.**

     The holder of this Bond is entitled to the benefits
of the BCRA Undertaking.  Such undertaking shall not
constitute a guarantee of Argentina's obligations hereunder.

20.   <u>Descriptive Headings</u>.

The descriptive headings appearing in these Terms and Conditions of the Bonds are for convenience of reference only and shall not alter, limit or define the provisions hereof.

[FORM OF ASSIGNMENT]

ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto

[PLEASE INSERT SOCIAL SECURITY,
TAXPAYER IDENTIFICATION OR OTHER
IDENTIFYING NUMBER OF ASSIGNEE]

_____

[PLEASE PRINT OR TYPEWRITE NAME AND ADDRESS OF ASSIGNEE]

_____

_____

_____

the within Bond and all rights thereunder, hereby irrevocably constituting and

appointing _____

_____, attorney, to transfer such

Bond on the books of the Registrar, with full power of substitution in the

premises.

Dated: _____     _____

                                    Signature of Assignor

NOTICE:  The signature to this assignment must correspond with the name as
         written upon the face of the within Bond in every particular, without
         alteration or enlargement or any change whatsoever.

EXHIBIT 2A
to Discount Bond and Par
Bond Exchange Agreement

FORM OF GLOBAL DISCOUNT BOND AND PAR BOND

(Non-U.S. Global Bond and
U.S. Temporary Global Bond)

[Form of Face of Bond]

[THIS BOND HAS NOT BEEN REGISTERED UNDER THE UNITED STATES
SECURITIES ACT OF 1933, AS AMENDED, AND MAY NOT BE OFFERED OR
SOLD DIRECTLY OR INDIRECTLY IN THE UNITED STATES OF AMERICA,
ITS TERRITORIES OR POSSESSIONS, OR TO OR FOR THE ACCOUNT OF
ANY U.S. PERSON (AS DEFINED IN REGULATION S OF THE UNITED
STATES SECURITIES ACT OF 1933), EXCEPT PURSUANT TO AN
EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT OR IN A
TRANSACTION NOT REQUIRING REGISTRATION UNDER SUCH ACT.  THIS
BOND IS TRANSFERABLE ONLY AS PROVIDED HEREIN AND IN THE
FISCAL AGENCY AGREEMENT REFERRED TO BELOW.][1]

[ORIGINAL ISSUE DISCOUNT LEGEND, AS REQUIRED BY THE FISCAL
AGENCY AGREEMENT.]

SALE OR TRANSFER IN BEARER FORM OF PARTICIPATIONS, OR
BENEFICIAL INTERESTS, HEREIN MAY SUBJECT THE SPONSOR THEREOF
TO SANCTIONS PURSUANT TO SECTION 4701 OF THE UNITED STATES
INTERNAL REVENUE CODE.

THIS BOND IS SECURED AS TO PAYMENT OF PRINCIPAL AT STATED
MATURITY.  THE COLLATERAL FOR PRINCIPAL IS NOT AVAILABLE TO
PAY THE PRINCIPAL OF THIS BOND, ON ACCELERATION, REDEMPTION
OR OTHERWISE, BEFORE STATED MATURITY OR TO PAY INTEREST.
THIS BOND IS ALSO PARTIALLY SECURED AS TO PAYMENT OF INTEREST
TO THE EXTENT DESCRIBED IN THE COLLATERAL PLEDGE AGREEMENT
(AS DEFINED IN THE FISCAL AGENCY AGREEMENT).

[NEITHER THE HOLDER NOR THE BENEFICIAL OWNERS OF THIS
TEMPORARY GLOBAL BOND SHALL BE ENTITLED TO RECEIVE PAYMENTS
OF PRINCIPAL HEREOF OR INTEREST HEREON.]*

[THIS BOND MAY NOT BE LISTED ON ANY STOCK EXCHANGE.]**

---

[1].    This legend will be included on (i) each U.S. Temporary
        Global Bond and (ii) all Bonds issued on transfer or
        exchange of, or in substitution for, any such U.S.
        Temporary Global Bond until the legend may be removed in
        accordance with Section 6 of the Fiscal Agency Agreement
        (as defined herein).

*     Insert for U.S. Temporary Global Bond only.

**    Insert for Global Bond representing USD Discount
      Series U or USD Par Series U only.

Ex. 2A, p.2

## REPUBLIC OF ARGENTINA

[NON-U.S.] [U.S. TEMPORARY]2 GLOBAL BOND

Collateralized __[3]__ Rate Bonds Due 202_*
( __[4]__ )

The REPUBLIC OF ARGENTINA ("<u>Argentina</u>"), for value received, hereby unconditionally promises to pay to [ 5 ], or registered assigns on _____, 202_*, on presentation for endorsement or surrender of this [Temporary]** Global Bond, an amount in UNITED STATES DOLLARS equal to the aggregate outstanding principal amount hereof as set forth on the Schedule attached hereto.

2.   Insert "Non-U.S." for each Series to be issued pursuant to Section 3(a) of the Fiscal Agency Agreement and "U.S. Temporary" for each Series to be issued pursuant to Section 3(b) of the Fiscal Agency Agreement.

3.   Insert "Floating" for each Discount Series and "Fixed" for each Par Series.

4.   Insert, for each Series, the Series designation (<u>i.e.</u>: USD Discount Series L, USD Discount Series U, USD Par Series L and USD Par Series U).

5.   Insert, for each Series to be issued:

> (i)   pursuant to Section 3(a) of the Fiscal Agency Agreement:
>
> > "Union Bank of Switzerland, [_____] office, as Common Depositary, for Cedel S.A. ("<u>Cedel</u>") and for Morgan Guaranty Trust Company of New York, Brussels office, as operator of the Euroclear Clearance System; or
>
> (ii)   pursuant to Section 3(b) of the Fiscal Agency Agreement:
>
> > "Citibank, N.A., New York office, as Registrar under the Fiscal Agency Agreement referred to below".

\*   Insert the date which is the earlier of the 30th anniversary of the Exchange Date and March 31, 2023.

\*\*   Insert for U.S. Temporary Global Bond only.

Ex. 2A, p.3

This [Temporary]* Global Bond is issued in respect of an issue of Collateralized __[3]__ Rate Bonds Due 202** (__[4]__) of Argentina and is governed by the Terms and Conditions of the Bonds annexed hereto (the "Terms and Conditions"), which Terms and Conditions are incorporated herein by reference, and by the provisions of the USD Discount Bond and Par Bond Fiscal Agency Agreement of even date herewith (as amended and in effect from time to time, the "Fiscal Agency Agreement") among Argentina, Citibank, N.A., as Fiscal Agent, Authenticating Agent, Paying Agent, Registrar, Transfer Agent and Calculation Agent and Citibank (Luxembourg) S.A., as Authenticating Agent, Paying Agent and Transfer Agent. Interest on the principal amount hereof shall accrue from (and including) __[6]__, at the rates per annum provided in such Terms and Conditions. Argentina further unconditionally agrees to pay interest on overdue amounts of principal and interest on this [Temporary]* Global Bond as set forth in such Terms and Conditions. [Until beneficial interests in this Temporary Global Bond are exchanged for definitive Bonds, neither the holder nor the beneficial owners hereof shall be entitled to receive payments of principal of or interest on the Bonds evidenced by this Temporary Global Bond.]*

Argentina hereby irrevocably undertakes to exchange this [Temporary]* Global Bond in accordance with the terms of the Fiscal Agency Agreement. Upon any such exchange, the Schedule attached hereto shall be endorsed to reflect the reduction of the principal amount evidenced hereby.

Beneficial interests in this Global Bond may be transferred or sold only as units that include all interest and principal components and may not be separated, directly or indirectly, into component interest and principal portions. [Transfers of beneficial interests in the Temporary Global Bond will not be registered by the Registrar.]* This [Temporary]* Global Bond may not be converted directly or indirectly into unregistered form.

The outstanding principal amount of this [Temporary]* Global Bond shall be increased or decreased from time to time in accordance with the Fiscal Agency Agreement and such increases or decreases shall be endorsed on the

---

*     Insert for U.S. Temporary Global Bond only.

**    Insert the earlier of the year in which the 30th anniversary of the Exchange Date occurs and the year 2023.

6.    Insert the date which is the earlier of the Exchange Date and March 31, 1993.

Schedule attached hereto and recorded by the Fiscal Agent [and the Registrar]*.

This [Temporary]* Global Bond may be redeemed at the option of Argentina, as a whole or in part, and payment of this [Temporary]* Global Bond or any portion hereof may be accelerated, and Bonds represented by this [Temporary]* Global Bond may be repurchased or otherwise acquired by Argentina and, except as provided in the Terms and Conditions, surrendered for cancellation, each in accordance with the terms and provisions of the Terms and Conditions and the Fiscal Agency Agreement. Upon any [payment, redemption or]** cancellation of all or a portion of this [Temporary]* Global Bond, the Schedule attached hereto shall be endorsed to reflect [the principal amount of this Global Bond paid or redeemed or]** the principal amount of Bonds represented by this [Temporary]* Global Bond cancelled, and the principal amount of this Global Bond shall be reduced for all purposes by the amount so [paid, redeemed or]** cancelled.

In the event that the principal amount endorsed on the Schedule attached hereto is not equal to the principal amount recorded in the records maintained by the Registrar or the Fiscal Agent, as applicable, the records maintained by the Registrar or the Fiscal Agent, as applicable, shall be binding hereunder. [Upon any payment of interest due on this Global Bond, the Schedule attached hereto shall be endorsed to reflect the amount of interest paid. The registered holder of this Global Bond shall be the only Person entitled to receive payments in respect of any interest in this Global Bond.]**

THIS [TEMPORARY]* GLOBAL BOND SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, UNITED STATES.

This [Temporary]* Global Bond shall not be valid or obligatory until the certificate of authentication hereon

---

\*    Insert for U.S. Temporary Global Bond only.

\*\*   Insert for Non-U.S. Global Bond only.

shall have been duly signed by an Authenticating Agent under the Fiscal Agency Agreement.

IN WITNESS WHEREOF, Argentina has caused this [Temporary]* Global Bond to be duly executed on its behalf by an Authorized Official (as defined in the Fiscal Agency Agreement) on and as of the date written below.

Dated: _____          THE REPUBLIC OF ARGENTINA

By _____
                                        Title:

Certificate of Authentication:

This is one of the [Temporary]* Global Bonds referred to in the within-mentioned Fiscal Agency Agreement

CITIBANK, N.A.,                or   CITIBANK (LUXEMBOURG) S.A.,
as Authenticating Agent            as Authenticating Agent

By _____      By _____
        Authorized Signatory                Authorized Signatory

Dated: _____          Dated: _____

_____

*    Insert for U.S. Temporary Global Bond only.

Ex. 2A, p.6

[Form of Attachment to Global Bond]

## TERMS AND CONDITIONS OF BONDS

[Terms and Conditions in the form
annexed to the form of Bonds
set forth in Exhibit 1 to the
Discount Bond and Par Bond Exchange Agreement]